**Meredith Trent CREEKMORE**

v.

**ATTORNEY GENERAL OF TEXAS, Sheriff of Jefferson County, Chief of Police of the City of Beaumont, and Thomas A. Davis, in his official capacity as the director of the Texas Department of Public Safety**

**No. 1:00–CV–264.**

United States District Court, E.D. Texas, Beaumont Division.

Aug. 30, 2000.

Robert Charles Griffin, East Texas Legal Services Inc., Shimon Kaplan, East Texas Legal Services, Beaumont, TX, for Meredith Trent Creekmore, plaintiffs.

Robert B. Maddox, Attorney General's Office, Law Enforcement Defense Division, Austin, Richard F. Baker, District Attorney's Office, Jefferson County, Dean Jerome Johnson, City of Beaumont, Beaumont, for Attorney General of Texas, Sheriff of Jefferson County, Chief of Police of the City of Beaumont, Thomas A. Davis, in his official capacity as the Director of the Texas Dept of Public Safety, defendants.

### MEMORANDUM REGARDING SUBJECT MATTER JURISDICTION

HINES, United States Magistrate Judge.

Meredith Trent Creekmore, plaintiff, was convicted of sex offenses under the Uniform Code of Military Justice (UCMJ), and served three years and ten months of a six-year federal sentence in custody of the United States Department of Justice, Bureau of Prisons (BOP). Upon his release in Texas, local authorities required Creekmore to register as a sex offender under Texas law. Creekmore now challenges the constitutionality of the Texas law, primarily on procedural due process grounds.

For reasons explained herein, the court *sua sponte* questioned its subject matter jurisdiction. This memorandum contains the court's analysis supporting the subse-

quent determination that subject matter jurisdiction exists.

## I. NATURE OF SUIT

According to Creekmore's Complaint, he pleaded guilty to violating Article 134 of the UCMJ on January 11, 1996. Specifically, Creekmore pleaded guilty to one specification of "Indecent Assault" and four specifications of "Indecent Acts or Liberties with a Child."[1] As a result of his plea of guilty, he was sentenced to six years imprisonment.

Creekmore served two years at the Federal Correctional Institute in Fort Leavenworth, Kansas, and completed serving his sentence at the Federal Correctional Complex in Beaumont, Texas. Creekmore alleges that prior to his release, BOP notified him that after release he would be subject to registration in Texas as a sex offender. Creekmore avers that BOP also notified the Sheriff of Jefferson County, the Attorney General of Texas, the Texas Department of Public Safety, and the Chief of Police of the City of Beaumont of Creekmore's release. The notice allegedly provided other information, including the assertion that Creekmore would be required to register as a sex offender.

On December 23, 1999, BOP released Creekmore from federal custody. On, January 24, 2000, an official within the Jefferson County sheriff's office wrote Creekmore informing him that he was required to register. The letter stated:

> According to the United States Bureau of Federal Prisons you have been convicted of several sexual offenses which makes your registration a mandatory requirement every ninety-(90) days for the rest of your life.

(Letter from R. Boles to Creekmore of 01/24/00.) The letter also set a deadline for completing registration, and advised that failure to comply would be a third degree felony punishable with state jail time of up to ten years. *See id.*

Creekmore, proceeding *pro se,* filed an action in the 58th Judicial District Court of Jefferson County challenging the registration requirement and seeking a temporary restraining order. The state court denied Creekmore's application for temporary restraining order on February 2, 2000.[2]

Creekmore thereafter registered under protest. He asserts that when he registered, local authorities advised him that his protest would be submitted to the Attorney General of Texas for a decision within two weeks. He further avers that no decision by the Attorney General was forthcoming.

Creekmore's Motion for Preliminary Injunction alleges that he then obtained counsel, non-suited the state court lawsuit, and instituted this federal action. For a cause of action, Creekmore's complaint challenges the constitutionality of the Texas Sex Offender Registration Program ("the Program"). *See* TEX. CODE CRIM. PROC. ANN. art. 62.01 et seq. (Vernon Supp.2000).

The complaint avers that the Program violates several clauses of the United States and Texas constitutions. Creekmore's counsel, however, acknowledges that the primary attack is based on procedural due process grounds. Specifically, Creekmore urges that the Program is infirm because: (1) it does not indicate who determines whether an offense under UCMJ is substantially similar to a listed offense under the Texas Penal Code; (2) it does not provide any process by which an individual determined to have a reportable conviction may challenge that determination; and (3) it does not give clear notice as to when one is deemed convicted two or more times of an offense; and (4) it does not provide a process by which an individual determined to have been convicted two

---

1. The Complaint actually avers four specifications of "indecent assault" on his minor daughter and one specification of "false swearing." Creekmore's Brief on Subject Matter Jurisdiction, however, clarified the discrepancy and confirms the true facts to be as stated above in the text. The transcript from the general court martial also indicates that the text's version is correct.

2. (*See* Pl.'s Comp. at 5.)

or more times of a sexually violent offense may challenge that determination.

For relief, Creekmore requests the court to:

(1) Declare that the Program violates his constitutional rights, and that he is not required to register;

(2) Enjoin defendants from enforcing the Program against him;

(3) Order defendants to remove his name from any database or list of sex offenders maintained;

(4) Costs of suit; and

(5) Other appropriate injunctive relief.

(Pl.'s Comp. at 8.) Creekmore does not seek money damages.

## II. PROCEEDINGS

Shortly after instituting suit, Creekmore moved for a preliminary injunction. After reviewing of the motion and Complaint, the court convened a status conference to consider the advisability of consolidating hearing of the application for a preliminary injunction with an advanced trial of the action on the merits.[3] At the status conference, the court invited Creekmore's counsel to describe the general parameters of Creekmore's claims. Moreover, the court inquired as whether Creekmore contends that his UCMJ offenses are not substantially similar to offenses under the Texas Penal Code.

Creekmore's counsel responded ambivalently with "I really do not know." (June 29, 2000 Hearing.)[4] This indistinct response raised the court's concern as to whether this action is based on actual or threatened injury, or on purely abstract, conjectural, speculative, or hypothetical harm. The response also raised the specter of a suit based on mere ideological disagreement with the law. In either case, the controversy would not constitute a justiciable action.[5]

Accordingly, the court *sua sponte* scheduled oral arguments on the question of subject matter jurisdiction, and invited briefing from counsel.[6] Counsel for Creekmore and for defendant, Chief of Police of the City of Beaumont, each submitted briefs. Moreover, all counsel of record participated in oral argument at a hearing convened on August 10, 2000.

## III. DISCUSSION AND ANALYSIS

The court has carefully considered the briefs and arguments of counsel on this issue. The analysis begins with a description of relevant statutes. It proceeds next to a discussion of general principles of the standing doctrine. Finally, it concludes with an application of those principles to Creekmore's allegations in this case.

### A. Statutory Schemes

#### 1. Wetterling Act

In 1947, the state of California became the first to enact a sex offender *registration* statute.[7] In 1990, the state of Washington became the first to enact a sex

---

3. *See* FED. R. CIV. P. 65(a)(2).

4. Creekmore's Counsel stated:
   I don't even know exactly what substantially similarity means ... I really do not know. That decision has to be made at the initial stage by the state. I do have some doubts about what is substantially similar. (June 29, 2000 hearing.)

5. The Program's alleged deficiencies would be of academic interest unless Creekmore could articulate an arguable basis for potential relief if provided with notice, opportunity to be heard, an impartial determination, etc.

6. *See* FED. R. CIV. P. 12(h)(3) ("whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *see also* 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 101.30[2] (3d ed. 2000) ("Federal courts are under an independent obligation to examine their own jurisdiction ...[,] [a]ccordingly if the parties failed to raise the question, the issue of standing is to be addressed sue sponte by the court at the trial or appellate stage of proceedings.").

7. *See In the Matter of Ayres*, 239 Mich.App. 8, 608 N.W.2d 132, 139 (1999); Abril R. *Bedarf, Examining Sex Offender Community Notification Laws*, 83 CALIF. L. REV. 885, 939 n.6 (1995).

offender *community notification* statute.[8] The idea was politically popular, and by 1993, twenty-four states, including Texas,[9] enacted various versions of such statutes. 139 CONG. REC. H10320 (daily ed. Nov. 20, 1993) (statement of Rep. Ramstad).

Congress concluded the national interest would be served if all states enacted such laws. *See id.* at H10321. Thus, on September 13, 1994, as part of the Violent Crime Control and Law Enforcement Act of 1994,[10] Congress passed the Jacob Wetterling [11] Crimes Against Children and Sexually Violent Offender Registration Act (Wetterling Act).[12] The intention of Congress in passing the Wetterling Act was to prod all states to enact similar sex offender registration and community notification laws and to provide for a national registration system to handle offenders who move from one State to another. *See* 139 CONG. REC. H10320–21 (daily ed. Nov. 20, 1993) (statement of Rep. Ramstad).

The Wetterling Act contained minimum requirements for federally approved state statutes, and it directed the Attorney General of the United States to establish guidelines for state programs.[13] First, the Act required that states regulate three categories of individuals. These categories were: (1) "a person convicted of a criminal offense against a victim who is a minor"; [14] (2) a person "convicted of a sexually violent offense"; [15] and (3) a person who is "a sexually violent predator." [16]

Next, to be federally approved, a state statute would require prison authorities— before releasing the above offenders from confinement—to notify the person being released of a duty to register; obtain the offender's fingerprints, photographs, and other registration information; and transmit that information to local authorities.[17] The Act then required state and local law enforcement agencies to register the offenders and maintain records.[18] The Act also designated the registry information as private, but it could be released when necessary to protect the public, for other law enforcement purposes, or when conducting confidential background checks.[19] The Act further required state authorities to transmit the offenders' "conviction data" to the Federal Bureau of Investigation.[20]

The Act also specified minimum registration requirements for offenders.[21] The

8. *See* Michael L. Skoglund, *Private Threats, Public Stigma? Avoiding False Dichotomies in the Application of Megan's Law to the Juvenile Justice System*, 84 MINN. L. REV. 1805, 1818–19 (2000).

9. Act effective Sep. 1, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Texas Sess. Law Serv. 2029–32.

10. *See* Pub.L. No. 103–322, 1796 (1994).

11. Jacob Wetterling was an eleven year old child abducted in October of 1989 from his home state of Minnesota. *See* James A. Billings and Crystal L. Bulges, *Maine's Sex Offender Registration and Notification Act; Wise or Wicked?*, 52 ME. L. REV. 175, 183 (2000). Jacob has never been found. *See id.* at 184. After Jacob's abduction, his family set up the Jacob Wetterling Foundation to prevent the problem of child abductions by strangers. *See id.* at 259 n. 84.

12. Pub.L. No. 103–322, Title XVII, Subtitle A, § 170101, 108 Stat.2038 (1994), (codified as 42 U.S.C. § 14071) (hereinafter Wetterling Act).

13. *See* Wetterling Act at § 170101(a).

14. Wetterling Act at § 170101(a)(1)(A).

15. Wetterling Act at § 170101(a)(1)(A).

16. Wetterling Act at § 170101(a)(1)(B).

17. *See* Wetterling Act at § 170101(b)(1).

18. *See* Wetterling Act at § 170101(b)(2).

19. *See* Wetterling Act at § 170101(d).

20. Wetterling Act at § 170101(b)(2).

21. For example, to receive federal approval, a state statute was required to compel persons convicted of a criminal offense against a victim who is a minor or of a sexually violent offense to verify their address on each anniversary of their initial registration date. *See* Wetterling Act at § 170101(b)(3)(A). The state statute was required to compel sexually violent predators to re-register every ninety days after their initial release. *See id.* at § 170101(b)(3)(B).

Act further required that states criminalize offenders' conduct in failing to register when required.[22]

Finally, the Act afforded states three years to implement statutes in compliance with the Act and Attorney General's guidelines.[23] Failure to implement a federally-approved program within that time would result in loss of ten percent of funds that would otherwise be allocated to the state under section 506 of the Omnibus Crime Control and Safe Streets Act of 1968.[24]

## 2. Federal Amendments

Congress subsequently amended the Wetterling Act four times. First, on May 17, 1996, "Megan's Law"[25] removed the original requirement that registry information be private.[26] It further provided that registry information *may* be disclosed for any permissible state law purpose, and that such information *shall* be released when necessary to protect the public.[27]

Second, the Pam Lychner[28] Sexual Offender Tracking and Identification Act of 1996 (Lychner Act)[29] added a new section directing the Attorney General of the United States to establish a national database at the Federal Bureau of Investigation, and to track the whereabouts and movements of persons subject to registration under the various federally-approved state statutes.[30] Further, the Lychner Act required persons residing in states that had not enacted federally approved programs to register with the FBI.[31] Finally, this amendment imposed on such persons continuing registration requirements generally consistent with those required under federally approved state statutes.[32]

Third, on November 26, 1997, Congress enacted the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998 (Appropriations Act).[33] The Appropriations Act broadened the scope of required coverage under approved state statutes and prevented some child sex offenders from "slipping through the cracks." 143 CONG. REC. H. 7628–29 (daily ed. Sept. 23,

22. *See* Wetterling Act at § 170101(c).

23. *See* Wetterling Act at § 170101(f)(1).

24. The reference to Section 506 of the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3765, is now confusing because Congress repealed Section 3765 with the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, Title VI, Subtitle C, Part 1, § 6091(a), 102 Stat. 4328 (1988), and recodified in 42 U.S.C. § 3756. Section 3756 now allocates funds to each participating states. *See* 42 U.S.C. § 1756(a)(1). The purpose of the grant is to:
   assist States and units of local government in carrying out specific programs which offer a high probability of improving the functioning of the criminal justice system, with special emphasis on a nationwide and multilevel drug control strategy by developing programs and projects to assist multijurisdictional and multi-State organizations in the drug control problem and to support national drug control priorities.
   42 U.S.C. § 3751(a).

25. Megan Kanga was a seven year old child who was abducted, raped, and murdered close to her New Jersey home on July 29, 1994. *See E.B. v. Verniero*, 119 F.3d 1077, 1081 (3d Cir.1997). The person who confessed to her murder lived across the street and

had been convicted of sex offenses involving young girls twice. *See id.*

26. *See* Megan's Law, Pub.L. No. 104–145, 110 Stat. 1345, (codified as amended at 42 U.S.C. § 14071(d)) (Megan's Law).

27. *See* Megan's Law.

28. Pam Lychner was a victims' rights advocate. *See* Roxanne Lieb et al., *Sexual Predators and Social Policy*, 23 CRIME. & JUST. 43, 114 n.2 (1998).

29. *See* Pam Lychner Sexual Offender Tracking and Identification Act of 1996, Pub.L. No. 104–236, § 170102, 110 Stat. 3093, (codified as amended at 42 U.S.C. § 14072) (hereinafter Lychner Act).

30. *See* Lychner Act at § 170102(b).

31. *See* Lychner Act at § 170102(c).

32. *See* Lychner Act at § 170102(d).

33. *See* Pub.L. No. 105–119, Title I, § 115, 111 Stat. 2440, 2461, (codified as amended in 42 U.S.C. § 14071(a)) (hereinafter Appropriations Act).

1997) (statement of Rep. McCollum). Specifically, the Appropriations Act provided that:

> Each State shall include in its registration program residents who were convicted in another State and shall ensure that procedures are in place to accept registration information from—
>
> (A) residents who were convicted in another State, convicted of a Federal offense, *or sentenced by a court martial;* and
>
> (B) nonresident offenders who have crossed into another State in order to work or attend school.[34]

The Appropriations Act also required that each state include in its program the requirement that any person "register in the State in which such person resides" and also "in any State in which the person is employed, carries on a vocation, or is a student." [35]

Finally, Congress amended the Wetterling Act on October 30, 1998, by enacting the Protection of Children from Sexual Predators Act of 1998.[36] This amendment authorized a federal grant of funds to states to offset their costs associated with complying with federal mandates for sex offender registration purposes.[37]

### 3. The Texas Program

The state of Texas enacted the Texas Sex Offender Registration Program in 1991.[38] Texas subsequently amended the Program four times: in 1993,[39] 1995,[40] 1997,[41] and 1999.[42] The Program now contains both sex offender registration and community notification provisions.

Under the federally-approved Texas Program, a person with a reportable conviction or adjudication for certain sex-related offenses must register with the local law enforcement authority where (s)he resides or intends to reside for more than seven days.[43] A reportable conviction includes "a conviction under the laws of another state, federal law, or the *Uniform Code of Military Justice* for an *offense containing elements that are substantially similar* to the elements of an offense listed under Paragraph (A),[44] (B),[45] (C),[46] (D),[47]

34. Appropriations Act at § 115(a)(2)(F) (emphasis added).

35. Appropriations Act at § 115(a)(3).

36. *See* Pub.L. No. 105–314, Title VI. § 607, 112 Stat. 2974, 2985. (codified as amended in 42 U.S.C. § 14071) (hereinafter Sexual Predators Act).

37. *See* Sexual Predators Act at § 607.

38. *See* Act effective Sep. 1, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Texas Sess. Law Serv.2029–32.

39. *See* Act effective Aug. 30, 1993, 73d Leg., R.S., ch. 866, § 1, 1993 Texas Sess. Law Serv. 3423.

40. *See* Act effective Sep. 1, 1995, 74th Leg., R.S., ch. 258, § 1, 1995 Texas Sess. Law Serv. 2197.

41. *See* Act effective Sep. 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Texas Sess. Law Serv. 2253.

42. *See* Act effective Sep. 1, 1999, 76th Leg., R.S., ch. 444, § 1, 1999 Texas Sess. Law Serv. 2824; Act effective June 18, 1999, 76th Leg., R.S., ch. 791, § 1, 1999 Texas Sess. Law Serv. 3415; Act effective Sep. 1, 1999, 76th Leg., R.S., ch. 1415, §§ 7–13, 1999 Texas Sess. Law Serv. 4831; Act effective Aug. 30, 1999, 76th Leg., R.S., ch. 1557, § 1, 1999 Texas Sess. Law Serv. 5354.

43. *See* Tex. Code Crim. Proc. Ann. art. 62.02(a) (Vernon Supp.2000) (hereinafter Texas Program).

44. Indecency with a child, *see* Tex. Pen. Code Ann. § 21.11 (Vernon 1999); Sexual assault, *see id.* at § 22.011 (Vernon 1999); Aggravated sexual assault, *see id.* at § 22.021 (Vernon 1999); Prohibited sexual conduct, *see id.* at § 25.02 (Vernon 1994).

45. Compelling prostitution, *see* Tex. Pen. Code Ann. § 43.05 (Vernon 1994); Sexual performance by a child, *see id.* at § 43.25 (Vernon 1999); Possession or promotion of child pornography, *see id.* at § 43.25 (Vernon 1999).

46. Aggravated kidnapping, if defendant committed the offense with intent to violate or abuse the victim sexually, *see* Tex. Pen. Code Ann § 20.04(a)(4) (Vernon 1999).

47. Burglary, if the offense is punishable under Subsection (d) of that section and defendant committed the offense with intent to commit a

(E),[48] or (G).[49]" [50]

Registration requires an offender to provide, *inter alia,* his full name, date of birth, sex, race, physical description, social security number, driver's license number, home address, photograph, and fingerprints.[51] Persons with reportable convictions must re-register annually for ten years.[52] However, a person subject to registration who has been convicted two or more times for offenses designated as "sexually violent offenses" must report to the local law enforcement authority not less than once in each ninety day period following the date the person first registered and continue to do so until death.[53]

After registration, the local law enforcement authority must send a copy of the registration form to the Texas Department of Public Safety.[54] If the victim was younger than seventeen years of age and the basis on which the offender is subject to registration was not an adjudication of delinquent conduct, the authority must immediately publish notice in the most widely circulated newspaper in the area.[55] Nevertheless, regardless of the basis on which the offender is subject to registration, if the victim is younger than seventeen years of age, the local law enforcement authority must immediately provide notice by mail to the superintendent of the public school district and to the administrator of any private primary or secondary school located in the district in which the offender intends to reside.[56]

The Texas Program also requires the Department of Public Safety to maintain a computerized central database containing the information required for registration.[57] The information contained in the database is public information, available upon written request.[58]

## B. Standing

Judicial power of the United States is limited. It extends only to certain "cases" and "controversies" enumerated in Article III, Section 2 of the constitution. *See* U.S. CONST. art. III, § 2. One manifestation of the case-or-controversy prerequisite for federal subject matter jurisdiction is the concept of "standing." The standing doctrine addresses the issue of who may bring suit:

> The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 101.20 (3d ed.2000).

The standing doctrine is complex and not defined with complete consistency. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). However, modern jurisprudence generally recognizes that in order to have standing, a putative plaintiff must satisfy three minimum requirements:

felony, *see* TEX. PEN. CODE ANN. § 30.02 (Vernon 1999).

48. Unlawful restraint, kidnapping, or aggravated kidnapping, if judgment in the case contains an affirmative finding under Article 42.015, *see* TEX. PEN. CODE ANN. § 20.02 (Vernon 1999).

49. A conviction for an attempt, conspiracy, or solicitation for an offense listed in Paragraph (A), (B), (C), (D), or (E), *see* TEX. PEN. CODE ANN. Ch. 15 (Vernon 1994).

50. Texas Program at art. 62.01(5)(J)(emphasis added).

51. *See* Texas Program at art. 62.02(b).

52. *See* Texas Program at art. 62.12(b).

53. *See* Texas Program at arts. 62.06(a) and 62.12(a).

54. *See* Texas Program at art. 62.02(c).

55. *See* Texas Program at art. 62.03(e).

56. *See* Texas Program at art. 62.03(e).

57. *See* Texas Program at art. 62.08(a).

58. *See* Texas Program at art. 62.08(b) and (c).

The irreducible constitutional minimum of standing contains three requirements. First, and foremost, there must be alleged (and ultimately proven) *an injury in fact*—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be *causation*—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be *redressability*—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102–03, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal citations omitted) (emphasis added).

## C. Application and Analysis

■ After considering written and oral arguments of counsel, the court concludes that Creekmore meets his initial burden of alleging injury in fact, causation, and redressability. Working backwards, it is clear that the relief sought will redress Creekmore's alleged injuries. Were this court ultimately to agree with Creekmore's contentions, it would have the power to grant relief that would prevent the state and local authorities from requiring Creekmore to register and from disclosing his registry information. Thus, Creekmore's alleged injury would be eliminated entirely.

Turning to the second element, Creekmore satisfies the court that his alleged injuries are traceable to defendants. Creekmore alleges that defendants ordered him to register, determined that he must re-register every ninety days for life as a repeat violent sex offender, and declined to provide meaningful review of his protests regarding: (1) lack of substantial similarity between his UCMJ offenses and listed state offenses, and (2) his status as a repeat sex offender. Thus, Creekmore has an arguable claim of injuries traceable to defendants.

Finally, Creekmore has alleged injury in fact. First, he argues without contradiction that his registry information is already released onto the Internet, and in any event may be released at any time law enforcement officials determine that release is necessary to protect the public.[59] Second, he shows that he has been placed in the most onerous registration category, i.e., every ninety days for life. Third, he advances colorable claims that (1) his UCMJ offenses are not substantially similar to listed Texas offenses,[60] and (2) his simultaneous UCMJ convictions do not constitute being convicted two or more times.[61]

■ To satisfy the standing requirement, Creekmore need not have a valid claim, only an arguable one. "[T]he ab-

---

**59.** By coincidence, The Examiner published Creekmore's information shortly before with the issuance of this Memorandum. *See Registered Sex Offenders in Jefferson County*, THE EXAMINER, Aug. 24–30, 2000, at 9.

**60.** Creekmore was convicted under UCMJ of Indecent Assault (one specification) and Indecent Acts or Liberties with a Child (four specifications). *See* 10 U.S.C. § 934. Creekmore demonstrates that Texas offenses require proof that the accused touched certain enumerated *quintessentially* private parts of the victim's body, whereas UCMJ criminalizes any touching. *See* TEX. PEN. CODE ANN. §§ 22.011 and 22.11 (Vernon 1994). Creekmore can argue that the Texas statute re-

quires proof of more reprehensible conduct then does UCMJ. It is, therefore, theoretically possible that a neutral decision maker might determine after a due process hearing that the UCMJ offenses are not substantially similar to the listed Texas Penal Code offenses.

**61.** Creekmore cites Texas criminal cases holding that two convictions on the same day before the same court count as only one conviction when the court considers enhancement. It is theoretically possible that a neutral decision maker might embrace this reasoning and determine that Creekmore is not subject to the more rigorous registration requirements imposed upon repeat or violent sex offenders.

sence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Id.* at 89. Moreover, plaintiffs threatened with prosecution if they violate a statute need not expose themselves to arrest and prosecution in order to challenge that statute. *See Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Peyote Way Church of God, Inc. v. Smith*, 742 F.2d 193, 198 (5th Cir.1984). These considerations, together with the foregoing analysis of the triad requirements of injury in fact, causation, and redressability, lead the court to conclude that Creekmore has standing to challenge the Texas Program.

An appropriate order consistent with this memorandum will be entered separately.

### ORDER REGARDING SUBJECT MATTER JURISDICTION

For reasons expressed in the accompanying memorandum addressing the issue of jurisdiction, it is

**ORDERED** that the court has subject matter jurisdiction, and will proceed to adjudicate claims and defenses asserted by the parties. It is further