

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0645-11

**MARK ALAN CRABTREE, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TWELFTH COURT OF APPEALS
## SMITH  COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, WOMACK, and HERVEY, JJ., joined.  KELLER, P.J., filed a concurring opinion. HERVEY, J., filed a concurring opinion.  ALCALA, J., filed a dissenting opinion, in which JOHNSON and COCHRAN, JJ., joined.

## O P I N I O N

A jury found Mark Crabtree guilty of the second-degree felony offense of failing to comply with sex offender registration requirements.  Crabtree claims that the evidence is legally insufficient to support his conviction because the evidence failed to demonstrate that the Department of Public Safety (DPS) determined his extra-jurisdictional conviction was substantially similar to a Texas offense requiring registration; therefore the State did not

prove that he was required to register as a sex offender in Texas. We agree and render a judgment of acquittal.

## I. BACKGROUND

In 1989, Crabtree was convicted of the following Washington offenses: rape of a child in the first degree, child molestation in the first degree, and statutory rape in the first degree. In January 2009, law enforcement officials in Smith County, where Crabtree resided, learned of these prior convictions. Concluding that Crabtree's previous Washington convictions required him to register as a sex offender in Texas and that he failed to do so, law enforcement officers arrested him for failure to comply with registration requirements. The grand jury returned a true bill of indictment which alleged

> on or about the 12th day of January, 2009 . . . MARK CRABTREE did then and there, while being a person required to register with the local law enforcement authority in the county where the defendant resided or intended to reside for more than seven days, to-wit: Smith County, because of a reportable conviction for Rape of a Child in the First Degree, intentionally or knowingly fail to register with the local law enforcement authority in said county.

Crabtree sought to quash the indictment alleging the indictment's language failed to give him sufficient notice of the charged offense's felony level under Texas Code of Criminal Procedure article 62.102 which defines separate offenses for a state-jail felony, third-degree felony, and second-degree felony. Crabtree also argued that the State failed to allege that his previous conviction was a reportable conviction as defined in article 62.001(5). The trial court denied his motion.

At trial, the State began its case-in-chief by introducing the judgment and charging instruments documenting Crabtree's Washington convictions for rape of a child in the first degree, child molestation in the first degree, and statutory rape in the first degree, for which he was sentenced to confinement for a term of 89 months, 41 months, and 61 months, respectively. The sponsoring witness, Noel Martin, a crime scene investigator with the Smith County Sheriff's Office who compared Crabtree's fingerprints to the documents, testified that the conduct described in the charging instrument for rape of a child in the first degree would be considered a first-degree felony aggravated sexual assault of a child in Texas.

The State then called Smith County Sheriff's Deputy Jeri Scott to establish Crabtree's registration requirement. Deputy Scott was in charge of the sex offender registration program in Smith County. In that capacity, Deputy Scott registered those required to register as sex offenders, received registrants' verifications, and performed residence and employment checks. She also provided guidance to other law enforcement officers on sex offender registration issues.

In January 2009, Deputy Scott received a call from Whitehouse Police Department Officer Bob Overman inquiring about Crabtree's sex offender status. After receiving the call, Deputy Scott ran Crabtree's criminal history by searching the TCIC/NCIC database. She also searched for Crabtree's name in a local database containing incident reports with suspect, victim, and witness information. There, she found Crabtree was identified as a witness in a 2008 burglary case which listed his address as being in Whitehouse, located in

Smith County. Based on her discovery of Crabtree's conviction for the Washington offense of rape of a child in the first degree, she determined that Crabtree had a duty to register as a sex offender in Texas because, in her opinion, the offense was substantially similar to the Texas offense of aggravated sexual assault of a child. She stated rape of a child in the first degree was substantially similar to the Texas offense of aggravated sexual assault of a child and that child molestation in the first degree was substantially similar to a sexually violent offense, albeit without specifically identifying which sexually violent offense.

By her own admission, Deputy Scott based her substantial-similarity conclusion on the Washington offense's title: rape of a child in the first degree. She stated that she did not know the elements of Washington's rape of a child offense. She also conceded that DPS is ultimately responsible for determining whether an out-of-state conviction is substantially similar to a Texas offense. In fact, Deputy Scott testified that she submitted "paperwork" to DPS and was still waiting to hear back from them at the time of Crabtree's trial. This, according to Deputy Scott, indicated that "[the paperwork's] either fine or it's not been processed." The State did not proffer any evidence at trial or notify the trial judge that DPS determined that Crabtree's Washington conviction was substantially similar to a Texas offense that required registration as either a "reportable conviction or adjudication." The jury found Crabtree guilty of the second-degree felony offense and assessed a punishment of eighteen years' confinement and a $10,000 fine.

Crabtree appealed, arguing that the trial court erred in denying his motion to quash the

indictment and that the evidence was insufficient to support his conviction and sentence. As to the sufficiency of the evidence, Crabtree claimed that Code of Criminal Procedure article 62.003 makes a DPS substantial-similarity determination necessary to prove that an individual is required to register due to an extra-jurisdictional conviction. The court of appeals disagreed and held that article 62.003 does not make the requirement to register for an extra-jurisdictional conviction dependent upon a DPS determination and, therefore, it is not an element of failure to comply with registration requirements.[1] The court further found the indictment adequate and the evidence sufficient to support the jury's determination that Crabtree was required to register because the State introduced into evidence the charging documents laying out the elements of Crabtree's prior convictions.[2]

We granted Crabtree's petition for discretionary review to determine whether the court of appeals erred in finding that (1) a DPS determination is not an element of the offense and, as a result, the evidence was legally sufficient, and (2) the indictment was sufficient. In challenging the evidence's sufficiency, Crabtree limits his arguments to the State's alleged failure to prove that he had a "reportable conviction or adjudication" and that he was required to register as a sex offender. So our legal-sufficiency analysis and conclusion address only these arguments. Because we find the evidence insufficient to support Crabtree's conviction, we need not address the indictment's sufficiency.

---

[1] *Crabtree v. State*, No. 12–09–00322–CR, 2011 WL 1204332, at *8 (Tex. App.—Tyler 2011) (not designated for publication).

[2] *Id.*

## II. Legal Sufficiency

In addressing a challenge to the sufficiency of the evidence, a court must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] The essential elements of the crime are determined by state law.[4] "Under Texas state law, we measure the sufficiency of the evidence 'by the elements of the offense as defined by the hypothetically correct jury charge for the case.'"[5] The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[6]

The court of appeals stated that the hypothetically correct jury charge in this case requires the State's evidence to show that (1) Crabtree was required to register, (2) he failed to comply with that requirement, (3) his duty to register would expire under article 62.101(a), and (4) he was required to verify his registration once every 90 days.[7] We disagree that this completely describes all of the necessary elements of the hypothetically correct jury charge.

---

[3] *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

[4] *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

[5] *Id*. (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

[6] *Id*.

[7] *See Crabtree,* 2011 WL 1204332, at *6.

The court of appeals's conclusion, based on its statutory interpretation, omitted an essential element that defines Crabtree's duty to register—that his extra-jurisdictional conviction was a "reportable conviction or adjudication" because DPS determined it was substantially similar to a Texas offense requiring registration.

## A. Interpretation of Chapter 62

The Legislature defines the elements of an offense as the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense.[8] When interpreting statutes, "we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."[9] We do this by focusing on the statute's literal text in an "attempt to discern the fair, objective meaning of that text at the time of its enactment."[10] And to this end, we presume that (1) "every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible"[11] and (2) the Legislature intended for the entire statutory scheme to be effective.[12] Only if the statute's plain language is ambiguous or would lead to absurd results that the Legislature could not have possibly intended, may a court look beyond the text and consult

---

[8] TEX. PENAL CODE § 1.07(a)(22).

[9] *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).

[10] *Id*.

[11] *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).

[12] *Mahaffey*, 364 S.W.3d at 913; *see* TEX. GOV'T CODE § 311.021(2).

extra-textual sources.[13]

Texas Code of Criminal Procedure Chapter 62 defines the scope of Texas's sex offender registration program and delineates the legal duties of those who administer it and those subject to its requirements. A person commits the offense of failure to comply with registration requirements if the person (1) is required to register and (2) fails to comply with any requirement of Chapter 62.[14] A person is required to register "with the local law enforcement authority in any municipality where he resides or intends to reside for more than seven days" if he has a "reportable conviction or adjudication."[15]

Article 62.001(5) defines "reportable conviction or adjudication" as a conviction or adjudication for specifically identified Texas sex offenses or offenses containing a sexual component.[16] The definition of "reportable conviction or adjudication " also includes a "violation of the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice for or based on the violation of an offense containing elements that are substantially similar to the elements of [an enumerated Texas offense], but

---

[13] *Id*. (citing *Boykin*, 818 S.W.2d at 785–86).

[14] TEX. CODE CRIM. PROC. art. 62.102(a) (West 2008).

[15] *Id*. art. 62.051(a).

[16] *See id*. art. 62.001(5) (including, for example, the offenses of continuous sexual abuse, possession or promoting child pornography, burglary of a habitation with the intent to commit an assaultive sexual offense, and a second conviction for the offense of indecent exposure.)

not if the violation results in deferred adjudication."[17] And article 62.003, entitled "Determination Regarding Substantially Similar Elements of Offense," states, in relevant part:

> (a) For purposes of this chapter, the department[18] is responsible for determining whether an offense under the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice contains elements that are substantially similar to the elements of an offense under the laws of this state.[19]

Article 62.102(b) sets out several distinct offenses ranging from state-jail to second-degree felonies that turn on the nature of a person's registration requirements: (1) whether a person must register for a ten-year period or for life; and (2) if lifetime registration is required, whether the person must verify his or her information with law enforcement yearly or every 90 days.[20]

In rejecting Crabtree's argument that a DPS determination is required to sustain his conviction, the court of appeals reasoned that, had the "legislature wished to define [out-of-state] convictions as the same or substantially similar to certain offenses only if the Department had made such a determination, it would have defined substantially similar

---

[17] TEX. CODE CRIM. PROC. art. 62.001(5)(H).

[18] *Id*. art. 62.001(1) ("'Department' means the Department of Public Safety.").

[19] *Id*. art. 62.003.

[20] *Id*. art. 62.102(b); *Juarez v. State*, 198 S.W.3d 790, 793–94 (Tex. Crim. App. 2006).

offenses in that way."[21] The court of appeals noted that article 62.003 does indeed require DPS to make determinations, but the statute "does not condition statutes being substantially similar on such a determination."[22]

We disagree with the court of appeals's interpretation because it undermines the Legislature's readily apparent statutory scheme. Although the Texas sex offender registration program is generally complex, the plain language of articles 62.001 and 62.003 clearly demonstrates the Legislature's intent that whether an extra-jurisdictional conviction or adjudication triggers a person's duty to register is controlled by a DPS determination pursuant to article 62.003. And the language that makes this delegation effective is not ambiguous nor does it compel absurd results the Legislature could not have possibly intended.

Article 62.003's broad introductory phrase, "For purposes of this chapter," indicates the Legislature's intent that article 62.003 applies to the entire Texas sex offender registration program. This naturally includes the definitions found in article 62.001 containing the broad extra-jurisdictional "catch-all" provisions requiring substantial similarity. Through article 62.003, the Legislature delegated the authority to DPS to expand the statutory definition of "reportable conviction or adjudication" by expressly giving it the responsibility to determine whether the elements of extra-jurisdictional convictions or adjudications are substantially

---

[21] *Crabtree*, 2011 WL 1204332, at *7.

[22] *Id*.

similar to Texas offenses the Legislature has specifically listed as requiring registration. In its delegation, the Legislature not only gave DPS the general responsibility to make substantial-similarity determinations, but was specific in defining DPS's continued responsibility in carrying out its mandate. Article 62.003 requires DPS to publish the criteria used in evaluating elements of extra-jurisdictional offenses and to provide records of extra-jurisdictional offenses previously determined to be substantially similar to Texas offenses.[23] Additionally, the inclusion of a specific appellate remedy from a DPS determination in article 62.003(c) makes plain the legal significance of such a determination. Those who wish to contest DPS's determination that they must register under Chapter 62 may do so in Travis County district court.[24] If the Legislature intended a DPS determination to be merely advisory or legally inoperative, there would be no need to create an appellate remedy from an adverse determination.

The dissent finds ambiguity in articles 62.001(5)(H) and 62.003 as to DPS's role in

---

[23] *Id*. art. 62.003(b) ("The department annually shall provide or make available to each prosecuting attorney's office in this state:

(1) the criteria used in making a determination under Subsection (a); and

(2) any existing record or compilation of offenses under the laws of another state, federal law, the laws of a foreign country, and the Uniform Code of Military Justice that the department has already determined to contain elements that are substantially similar to the elements of offenses under the laws of this state.").

[24] *Id*. art. 62.003(c) ("An appeal of a determination made under this article shall be brought in a district court in Travis County."); *see generally Tex. Dep't Pub. Safety v. Garcia*, 327 S.W.3d 898 (Tex. App.—Austin 2010, pet. denied).

determining substantial similarity. Assuming such ambiguity exists, article 62.003's legislative history leads us to the same conclusion based on the statutes' plain language: the Legislature intended for DPS to decide whether extra-jurisdictional convictions are reportable convictions or adjudications. As the dissent notes, article 62.003's creation was a direct response to federal litigation.[25] The Legislature was responding to *Creekmore v. Attorney General of Texas*, where Creekmore challenged Texas's sex-offender registration program claiming that the program, among other things, violated his right to due process because "(1) it does not indicate who determines whether an offense under [Uniform Code of Military Justice] is substantially similar to a listed offense under the Texas Penal Code; (2) it does not provide any process by which an individual determined to have a reportable conviction may challenge that determination; and (3) it does not give clear notice as to when one is deemed convicted two or more times of an offense."[26] According to House Bill 2113's bill analysis, article 62.003 "would make clear who decides whether an offense from another jurisdiction would trigger Texas registration requirements and would allow appeals from

---

[25] *See* House Research Organization, Bill Analysis, Tex. H.B. 2113, 77th Leg., R.S. at 4 (2001) (hereinafter "Bill Analysis"); *see also Public Hearing on S.B. 1648 Before the Sen. Crim. Justice Comm.*, 77th Leg. (statement of Dean Johnson, Police Legal Advisor for the Beaumont Police Department, Mar. 21, 2001) *available at* http://www.senate.state.tx.us/avarchive/?mo=03&yr=2001&lim=0.

[26] 116 F. Supp. 2d 767, 769–70 (E.D. Tex. 2000) (magistrate's opinion on Creekmore's Motion for Preliminary Injunction); *see generally Creekmore v. Attorney General of Texas*, 341 F. Supp.2d 648 (E.D. Tex. 2004).

these decisions."[27]   The bill analysis directly addresses DPS's responsibility and its impact: "DPS would have to determine whether an offense committed under another state's laws, federal law, or the Uniform Code of Military Justice contained elements that were substantially similar to the elements of an offense under Texas laws that would trigger a current law requirement that the person register as a sex offender."[28]

Purportedly relying on H.B. 2113's bill analysis, the dissent concludes a DPS substantial-similarity determination was intended only to apply to DPS in its administrative role or in the "civil-regulatory context."  The quoted language in H.B. 2113's bill analysis refutes this interpretation.  Also, limiting DPS's responsibility to make these determinations to its role as the sex-offender registration program's administrator is not dispositive.  Even if the dissent is correct in its assessment that a DPS determination was intended solely for the program's administration, this conclusion does not necessarily preclude our holding that DPS is solely responsible for identifying who must comply with Chapter 62 based on extra-jurisdictional convictions.  It is clear to us that identifying those subject to the registration requirement and its attendant conditions is the critical element that defines the scope of the sex-offender registration program and DPS's administration of it.  The dissent concedes as much when it suggests that the DPS-maintained compilation of offenses already determined to be substantially similar exists "in order to assist law-enforcement agencies in registering

---

[27]   Bill Analysis at 4.

[28]   *Id*. at 3.

sex offenders."[29]

The State notes that we have previously made substantial-similarity determinations as a matter of law without referencing article 62.003,[30] presumably in support of its position that it is preferable to have these substantial-similarity determinations made by the judicial branch, as opposed to "some out-of-court agency." The dissent finds the State's argument and its supporting authority persuasive; we do not. The State acknowledges that our decisions in *Prudholm v. State*, *Ex parte White*, and *Ex parte Warren* are distinguishable from the present issue. *Prudholm* and *Ex parte White* considered whether out-of-state convictions used for enhancement purposes were substantially similar under Texas Penal Code § 12.42.[31] While neither of those cases involved sex-offender registration nor article 62.003's interpretation, they do indicate that substantial-similarity issues are matters of law.[32]

*Ex parte Warren* did, however, involve sex-offender registration, but presented its registration issue in a distinguishable posture. Warren contested the imposition of sex-offender registration requirements as a condition of parole as a violation of his due process rights because he was not given prior notice and an opportunity to respond before the

[29] *Post*, at 21.

[30] *See Ex parte Warren*, 353 S.W.3d 490, 495–98 (Tex. Crim. App. 2011); *Prudholm v. State*, 333 S.W.3d 590 (Tex. Crim. App. 2011); *Ex parte White*, 211 S.W.3d 316, 319 (Tex. Crim. App. 2011).

[31] *Prudholm*, 333 S.W.3d at 592; *Ex parte White*, 211 S.W.3d at 318.

[32] *Prudholm*, 333 S.W.3d at 592, 599–600; *Ex parte White*, 211 S.W.3d at 318, 319–20.

conditions were imposed.[33]  In holding that the sex-offender registration condition did not violate due process, we relied on the analysis used in *Prudholm*[34] and concluded that, for purposes of Chapter 62, Warren's conviction for the Illinois offense of contributing to the sexual delinquency of a child was substantially similar to the Texas offense of indecency with a child.[35]  First, the limited issue confronting the Court in *Ex parte Warren* was whether the imposition of sex-offender registration conditions violated Warren's procedural due process rights as defined by the Fifth Circuit.[36]  Second, because the question of the propriety of a registration requirement as a condition of parole is so fundamentally distinct from the statutory definition of a criminal offense, *Ex parte Warren* lends little insight to the present issue.  While we held that Warren's out-of-state conviction was substantially similar to indecency with a child for purposes of article 62.001(5)(H)—which would statutorily require

---

[33]  *Ex parte Warren*, 353 S.W.3d at 491.

[34]  *Prudholm*, 333 S.W.3d at 592–95 (holding that to find two offenses substantially similar, a review of each offense elements must (1) display a high degree of likeness, but may be less than identical, and (2) be substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses)

[35]  *Id*. at 497–98.

[36]  *Id*. at 492–93 (noting our adoption of the Fifth Circuit's holding in *Meza v. Livingston*, 607 F.3d 392 (5th Cir. 2010), that, among other things, a parolee is entitled to written notice that sex-offender conditions may be imposed as a condition of release and a hearing which allows the parolee to be heard and present evidence; however if the parolee has been convicted of a sex offense, he has received all the process due).

a parole panel to impose sex-offender registration conditions[37]—our conclusion that Warren's conviction was a reportable conviction or adjudication requiring Warren to register was a more expansive holding than was required to resolve Warren's due process claim. We have upheld sex-offender registration parole conditions on a much lesser finding.[38] Because *Ex parte Warren* addressed a due process claim in the context of parole conditions, was overly broad, and did not contemplate the definition of the offense of failure to comply with registration requirements, we are not persuaded that it has precedential or persuasive value to the present issue.

In addition to *Ex parte Warren*, the dissent claims our opinion in *Ex parte Harbin*[39] supports its position that substantial-similarity determinations are questions of law that can be determined only by the judge presiding over the criminal proceeding. This interpretation of *Ex parte Harbin* is mistaken. In addressing Harbin's claim of actual innocence for failing to comply with registration requirements based on two out-of-state convictions, we held that, due to the various savings clauses found in the legislative amendments to Chapter 62, the

---

[37] TEX. GOV'T CODE § 508.186 ("A parole panel shall require as a condition of parole or mandatory supervision that a releasee required to register as a sex offender under Chapter 62, Code of Criminal Procedure: (1) register under that chapter . . . .").

[38] *See Ex parte Campbell*, 267 S.W.3d 916, 922 (Tex. Crim. App. 2008) (concluding that a parole panel was authorized to impose sex-offender registration requirements based on a single conviction for indecent exposure because a parole panel has broad authority to impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.)

[39] 297 S.W.3d 283 (Tex. Crim. App. 2009).

convictions alleged in the indictment did not trigger an obligation to register.[40] We also acknowledged that article 62.0101—article 62.003's predecessor—gave DPS the responsibility to make substantial-similarity determinations retroactively. And to illustrate the effect of DPS's retroactive responsibility, we explained its implications on all of Harbin's previous convictions based on a DPS publication, contained in the record, which listed California offenses it determined to be substantially similar to Texas offenses.[41] We held that, under the version of Chapter 62 in effect at the time of the opinion, Harbin would need to register for his 1988 conviction for lewd or lascivious acts—the same offense that we held did not trigger Chapter 62's applicability at the time of the alleged offense—and his 1995 conviction for sexual battery because DPS determined in 2006 that both of these convictions are reportable convictions in Texas.[42] We further stated, "Applicant will not need to register for his 1994 and 1996 convictions for annoying or molesting a child because . . . [DPS] does not list California Penal Code § 647.6 as a reportable conviction."[43] The dissent's claim that we viewed the lack of a DPS determination as "persuasive evidence" and "not conclusive evidence of a duty to register" is a plain misreading of the case. *Ex parte Harbin*'s discussion of substantial similarity could arguably be labeled dicta and therefore not binding

---

[40] *Id*. at 286–87.

[41] *Id*. at 287.

[42] *Id*.

[43] *Id*.

precedent. Regardless, it certainly does not stand for the proposition that the presiding judge is the only one who can make a substantial-similarity determination. If anything, *Ex parte Harbin* stands for the opposite proposition: a DPS substantial-similarity determination controls whether an individual has a duty to register based on an out-of-state conviction. While our conclusion today is a result of interpreting articles 62.001(5)(H) and 62.003, it is consistent with and now firmly establishes what *Ex parte Harbin* implicitly and necessarily presumed.

Citing to Texas Government Code § 311.021, the State maintains this statutory interpretation would violate the presumption that "a result feasible of execution is intended." The State goes on to assert that, "It is completely unfeasible to expect DPS to be able to maintain a constant vigil upon the criminal law of the entire world for a period of time spanning the conceivable lifetimes of any potential violators of Art. 62.102."[44] The court of appeals expressed similar sentiments in recognizing that the "statute appears to place a very large burden on the Department."[45] The State, like the court of appeals and the dissent, appears to suggest that adhering to article 62.003's plain language creates an insurmountable

---

[44] State's Br. on the Merits 13.

[45] *Crabtree*, 2011 WL 1204332, at *7 ("But the task would have to be larger than a simple survey of every law in the entire world because neither the laws of this state nor any other are static. And so this duty would seem to entail keeping track of the legislative process in the fifty states, every foreign country, and the U.S. federal system. Finally, because some sex offenders serve lengthy sentences before being released, the Department would be responsible for a survey of previous laws of the fifty states, every foreign country, and the U.S. federal system and military code.").

burden for DPS and as a result is unwise. This position, however, is quite different from suggesting that article 62.003's language leads to absurd results that the Legislature could not have intended. The wisdom of a particular statute is outside this Court's purview.[46]

Relying on statutory construction aids, the dissent takes issue with the consequences of our interpretation which it views as thwarting the objective of Texas's sex-offender registration program. The dissent first claims that our interpretation creates a "loophole" that encourages non-registration because it removes the burden on offenders to initiate registration and hinders the State's ability to prosecute those with out-of-state sex offenses despite their knowing or intentional failure to register. However, our decision is limited to defining the statutory elements of the failure-to-comply-with-registration-requirements offense viewed through the hypothetically correct jury charge. If, through our restrained approach in interpreting the plain language enacted by the Legislature, we have exposed a weakness in the state's statutory scheme not intended by the Legislature, it has the ability to remedy it. Like our inability to opine on a law's wisdom, we cannot judicially amend or effectively delete statutory language in the name of interpretation.

The dissent also claims that our interpretation puts individuals' substantive and procedural due process rights at risk "because a defendant could be subjected to criminal

---

[46] *See generally Montgomery v. State*, 170 S.W.2d 750, 753 (Tex. Crim. App. 1943) ("The courts are not concerned with the wisdom of legislation, this being a matter resting exclusively with the legislature.").

liability on the basis of a mere administrative determination."[47]  The dissent's due process

concerns revolve around a defendant's inability to contest a DPS determination within the

criminal prosecution itself and present a complete defense.  The dissent's claim that, as a

result of our statutory interpretation, a defendant convicted for failing to register would likely

have a valid due process claim based on being deprived of the opportunity to defend himself,

is questionable.  The dissent itself acknowledges that the Supreme Court has held that, to be

consistent with constitutional protections, there must be some meaningful review when

administrative determinations play a critical role in the subsequent imposition of a criminal

sanction.[48]  Although the adequacy and the proper implementation of such review are outside

the scope of this case, article 62.003's appellate process presumably provides such

meaningful review of a DPS determination in that it affords those affected a reasonable

opportunity to be heard and present evidence[49] and—according to the dissent—"is frequently

---

[47] *Post*, at 20.

[48] *See, e.g., United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987); *Estep v. United States*, 327 U.S. 114, 121–22 (1946); *Yakus v. United States*, 321 U.S 414, 444 (1944).

[49] *See Yakus*, 321 U.S. at 433 (holding that the Emergency Price Control Act's judicial review's restriction of an administrative determination to a single court did not violate due process as long as the process affords a reasonable opportunity to be heard and present evidence); *see also Mendoza-Lopez*, 481 U.S. at 838–40 (holding that a collateral challenge to a prior deportation order is only permitted in a criminal prosecution based on the contested order when the deportation proceeding effectively eliminates the right of judicial review).

used by potential registrants."[50] The federal district court's finding in *Creekmore* supports this view. The court found that newly enacted article 62.003 provided procedural due process because the statute charged a specific agency with the responsibility of making the substantial-similarity determination that used established procedures and a means of appeal from the determination.[51] And courts have generally rejected substantive due process claims based on an obligation to register as a sex offender.[52] Further, it is far from certain that a due process claim based on a deprivation of "a meaningful opportunity to present a complete defense" in this context will have merit. The dissent's broad assertion that our Chapter 62 interpretation potentially infringes upon this right, without more, is unsubstantiated. And the cases it relies upon are unhelpful in this regard.[53]

Establishing that Crabtree had a reportable conviction or adjudication under the

---

[50] *See post*, at 14 n.4 (citing court-of-appeals decisions addressing article 62.003 appeals).

[51] *Creekmore*, 341 F.Supp.2d at 667; *see generally Meza v. Livingston*, 607 F.3d 392 (5th Cir. 2010); *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004).

[52] *See, e.g.*, *Doe v. Moore*, 410 F.3d 1337, 1345 (11th Cir. 2005) ("The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld registration and publication requirements finding no constitutional infirmities."); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) (holding that persons convicted of serious sex offenses do not have a fundamental right to be free from registration requirements).

[53] *See post*, at 21 n.9 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (holding that a state procedural rule excluding evidence regarding a confession's voluntariness violated the defendant's meaningful opportunity to present a complete defense) and *California v. Trombetta*, 467 U.S. 479, 485 (1984) (holding that this principle was not violated when breath-test evidence was not preserved by the State)).

definition of article 62.001(5)(H) is a condition precedent to proving he had a duty to register and failed to comply with that burden.[54] Without proving that Crabtree's conviction satisfied this definition, he could not have committed the charged offense because he would not labor under an obligation to register.[55] Based on the plain language of articles 62.001(5)(H) and 62.003, we hold that a DPS substantial-similarity determination is an essential element of the offense of failure to comply with registration requirements.

Finding that a DPS determination was not an element of the offense, the court of appeals found that the evidence was sufficient to establish substantial similarity between Crabtree's convictions and an enumerated Texas offense without a DPS determination.[56] The court of appeals noted that the State's witness's evaluation of the substantial similarity of Crabtree's Washington convictions based solely on its title was "problematic," but it nonetheless found the evidence sufficient because the State introduced Crabtree's charging documents that contained the elements of his previous convictions.[57]

We address the court's sufficiency conclusion because it is a direct result of its misreading of articles 62.001(5)(H) and 62.003 and inappropriately assigns to the jury the

---

[54] *Id*. art. 62.102(a); TEX. PENAL CODE § 6.01(c) ("A person who omits to perform an act does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act.").

[55] *See id*.

[56] *Crabtree*, 2011 WL 1204332 at *9.

[57] *Id*.

burden of deciding what the law is. The court of appeals would permit the jury to determine whether Crabtree's previous conviction or adjudication was substantially similar to a Texas offense requiring registration. But whether a particular extra-jurisdictional conviction or adjudication is a "reportable conviction or adjudication" under article 62.001(5)(H) is a matter of law.[58] While a jury must find that Crabtree has a reportable conviction or adjudication that requires him to register, it is not the jury's role to determine whether a particular conviction or adjudication legally satisfies article 62.001(5)(H). In a case in which a duty to register is imposed by virtue of an extra-jurisdictional conviction or adjudication, this distinction between issues of fact and law is appropriately addressed by a jury charge that instructs the jury in the abstract and correctly sets out the law of the case.[59] Having concluded that a DPS determination is an essential element of the charged offense, we turn to the evidence the State adduced at trial and whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

## B. The Evidence is Insufficient

The record is silent as to whether DPS previously determined that the Washington offense rape of a child in the first degree was substantially similar to a Texas offense statutorily defined as a "reportable conviction or adjudication." Indeed, in its closing

---

[58] *See Prudholm*, 333 S.W.3d at 592, 599–600.

[59] TEX. CODE CRIM. PROC. art. 36.13 (stating, "the jury is the exclusive judges of the facts, but is bound to receive the law from the court and be governed thereby."); *see id*. art. 36.14 ("[T]he judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case.").

argument and in response to Crabtree's closing remarks, the State expressly advocated that a DPS determination was not required to prove its case and that the jury, on its own, could find that Crabtree's conviction for rape of a child was substantially similar to the offense of aggravated sexual assault in Texas. Instead, the State offered Detective Martin's and Deputy Scott's lay person legal conclusions that the Washington offense was substantially similar to the Texas offense of aggravated sexual assault of a child. In light of our interpretation of the relevant Chapter 62 articles, this is not sufficient. From the guilty verdict it returned, we can assume the jury found Crabtree was previously convicted of rape of a child in the first degree. However, the additional step in the jury's required adjudicatory process—that rape of a child in the first degree is a "reportable conviction or adjudication"—is not supported by the record and its absence leads us to conclude that no rational juror could find that Crabtree had an obligation to register as a sex offender beyond a reasonable doubt.[60] Therefore, we find the evidence insufficient to sustain Crabtree's conviction.

### III. CONCLUSION

Holding that the evidence was legally insufficient to support Crabtree's conviction for the offense of failure to comply with registration requirements, we reverse the judgments of the courts below and enter a judgment of acquittal.

---

[60] *See Jackson*, 443 U.S. at 318.

DATE DELIVERED: October 31, 2012

PUBLISH