12·09·00322·CR



FILED IN COURT OF APPEALS
12th Court of Appeals District

JAN 18 2013

TYLER TEXAS
CATHY S. LUSK, CLERK



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0645-11

## MARK ALAN CRABTREE, Appellant

### v.

## THE STATE OF TEXAS

## ON STATE'S MOTION FOR REHEARING

COCHRAN, J., filed an opinion dissenting to the denial of the State's Motion for Rehearing in which JOHNSON and ALCALA, JJ., joined.

### OPINION

I would grant the State's Motion for Rehearing and affirm appellant's conviction for failing to comply with sex offender registration requirements based on critical trial testimony and statutes that the State has brought to our attention.[1] Appellant's Washington state parole

---

[1] The State's grounds for rehearing are as follows:

(1) The record contained an abundance of proof that Appellant's Washington conviction for Rape of a Child was substantially similar to the Texas offense of Aggravated Sexual Assault of a Child before the Court imposed a new element not listed in the statute criminalizing the failure to register as a sexual offender.

(2) The Court below correctly determined that Article 62.003(a) of the Code of Criminal Procedure does not impose a new element of proof in failure to register as a sexual

officer testified that appellant had received both oral and written notification that, based on his first-degree rape-of-a-child conviction, he had a lifetime sex-offender registration requirement in Washington state and in "any county" to which he might move. Appellant was on notice that he was required to register as a sex offender in Washington and in Texas, but he failed to register in either state. He violated not only the Washington and Texas sex-offender registration laws, but the federal SORNA law as well.[2] Furthermore, under Article 62.052[3] a person may be required to register as a sex offender even when his out-of-state conviction is not "substantially similar" to a sex offense in Texas.[4] The "DPS determination" provision[5] is an administrative-proceeding statute that ensures a due-process forum and hearing for a person who contends that his out-of-state conviction is not "substantially similar" to a Texas sex-offender statute. A DPS determination of substantial similarity is neither a condition precedent to registration or prosecution, nor is it an element of any criminal offense under Chapter 62.

---

offender offenses. The Legislative history of the articles establishing a duty to report and proscribing the failure to do so does not show that the intent of Art. 62.003 was to add a new element to the crime of failure to register as a sex offender.

[2] *See* 18 U.S.C. § 2250(a) (setting out penalty for violating federal Sex Offender Registration and Notification Act of 42 U.S.C. § 16913).

[3] TEX. CODE CRIM. PROC. art. 62.052.

[4] The court of appeals noted that Article 62.052 "is not implicated in this case," but that is only because the State proceeded on the equally sound theory that applicant's Washington State conviction was a "reportable" one. *See Crabtree v. State*, No. 12–09–00322–CR, 2011 WL 1204332, at *7 n.12 (Tex. App.–Tyler March 31, 2011) (not designated for publication).

[5] TEX. CODE CRIM. PROC. art. 62.003.

I.

Immediately before trial began in this case, the prosecutor gave the trial judge a copy of the Washington Supreme Court opinion upholding appellant's sentence for two 1988 sex crimes against children.[6]  That opinion, of which we–as well as the trial judge–may take judicial notice, states that Crabtree was originally

> charged with five sexual assaults against children.  On April 18, 1989, he entered guilty pleas to charges of first degree child rape (count II), first degree child molestation (count IV), and first degree statutory rape (count V). . . . The court sentenced Crabtree to concurrent terms of 89 months (count II), 41 months (count IV), and 61 months (count V).  A one-year term of community placement was imposed as part of his sentence for counts II and IV . . . .[7]

The Washington Supreme Court noted that Crabtree admitted to sexually assaulting Jessica, age eight, and David, age seven, while he was babysitting them in August, 1988.[8]  Also before trial, both the State and defense agreed to take judicial notice of the Washington rape-of-a-child statute which provides that a person is guilty of a Class A felony "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."[9]

At trial, Detective Noel Martin with Smith County Sheriff's Office testified that

---

[6] *In re Crabtree*, 9 P.3d 814 (Wash. 2000).

[7] *Id.* at 816.

[8] *Id.* at 819; State's Exhibit 2.

[9] REV. CODE WASH. § 9A.44.073; *see State v. Bishop*, 816 P.2d 738, 742 (Wash. Ct. App. 1991) (under rape-of-a-child statute, "the State must prove that the defendant penetrated, at a minimum, the lips of the victim's sexual organs.").

appellant was the person whose fingerprints matched the fingerprints on the Washington state judgment of Mark Crabtree. Det. Martin explained the various pages of appellant's Washington certified penitentiary packet, including the 1989 "Order of Release and/or Transfer to Community Custody." That document set out the numerous sex-offender provisions, including the requirement to enter sexual deviancy treatment, "no-contact with children" and "no contact with the victims" without therapist permission provisions, as well as a requirement of approval of his residence by the community corrections officer. Appellant signed the order and initialed the box stating, "I have read or have had read to me the 'Registration Notification' and the foregoing conditions and requirements. Each of these conditions/requirements have been explained to me and I hereby agree to comply with them." On the certified judgment itself, appellant had initialed the box stating, "I have been registered with the Department of Corrections and informed of the registration requirements with my county of residence.   I have signed and received a copy of the DOC Registration/Notification, DOC 05-444A."

The Washington pen packet also contains a copy of the information. Count II, the rape-of-a-child offense, read, in pertinent part, "That the defendant Mark Alan Crabtree, in King County, Washington, during a period of time intervening between June 1, 1988, and August 31, 1988, being at least 24 months older than Jessica _____, had sexual intercourse with Jessica ____, who was less than 12 years old and was not married to Mark

Alan Crabtree."[10]  Appellant was, at the time, twenty-six years old.

Det. Martin testified that, if someone who is twenty-six has sexual intercourse with somebody who's less than 12 years old and not married to that person, that would be the offense of aggravated sexual assault of a child under Texas law–a first degree felony offense. And that offense is "substantially similar" to the Washington rape-of-a-child offense.

Officer Jeri Lynn Scott testified that she is in the sex-offender registration department of the sheriff's office.  She said that she determined that the crime of first degree rape of a child in Washington is substantially similar to aggravated sexual assault of a child in Texas based on the title of the offense, "Rape of a Child" and because appellant's Washington criminal judgment records "said he was a registered sex offender nonexpiring." Officer Scott was "confident" that the Washington sex offenses were substantially similar to the Texas sex offenses of aggravated sexual assault and indecency with a child. Therefore, appellant was required to register as a sex offender for life because first-degree rape of a child is a sexually violent offense.  Because appellant was also convicted of a second sex offense, he was required to register on a quarterly basis.  Officer Scott testified that if she's unsure as to whether out-of-state statutes are substantially similar to Texas offenses, she can contact DPS because DPS makes the final determination on whatever the registration requirements are.

Jefferson Overholser, a Washington parole officer, testified that he supervised

---

[10] Count IV of the Washington information, to which appellant also pled guilty, stated that Mark Alan Crabtree, "being at least 36 months older than David ____ had sexual contact with David ___ (by directing Jessica _____'s hand) who was less than 12 years old and was not married to Mark Alan Crabtree."

appellant in Washington and advised him of the need to register as a sex offender. Mr. Overholser said that appellant was required to certify that he had received a written copy of the DOC sex offender notification requirements and that he did so.[11] Mr. Overholser tells his parolees of the need to register with the sheriff's department in whatever county they reside. But appellant did not register even though Mr. Overholser personally informed him that he was required to do so at a community correction hearing in 2000 after appellant was arrested for noncompliance. State's Exhibit 3 is the DOC 05-444 form that appellant, in the Washington certified judgment, initialed having received a copy of. That form explains the registration and reporting requirements, including the following: "If you move to a new county, you must register in person with the sheriff of the new county within ten (10) days. You must also send a written notice to the sheriff in the county you moved from within the same ten (10) day period."[12] The form ends with the following advisory, written in all capital letters:

> Remember, it is a new criminal offense for you to fail to register unless you are relieved of the registration requirement as described above. It is your responsibility to understand and obey this law.

When officers went to arrest appellant for failure to register as a sex offender, appellant said,

---

[11] Mr. Overholster said that rape of a child is a Class A felony in Washington and requires lifetime registration.

[12] Appellant's sister told Officer Scott that appellant moved to Smith County in about 2002. Thus, the evidence showed that appellant ignored his legal duty to register in Washington State in 2000, and ignored his duty, under both Washington and Texas law, to register when he moved to Smith County.

"I've been expecting it."

The jury instructions in this case contained the following application paragraph:

Now if you find from the evidence beyond a reasonable doubt that on or about the 12th day of January, 2009, in Smith County, Texas, the defendant, Mark Crabtree, did then and there, while being a person required to register with the local law enforcement authority in the county where the Defendant resided or intended to reside for more than seven days, to-wit, Smith County, Texas, because of a reportable conviction for Rape of a Child in the First Degree, intentionally or knowingly failed to register with the local law enforcement authority in said county, then you will find the Defendant guilty of Failure to Register as a Sex Offender as charged in the indictment.[13]

The prosecutor's closing focused on common sense:

So the only question is, what evidence have you heard in trial, and what does the indictment require us to prove, okay? . . . And what is that? "While being a person required to register with local law enforcement in the county where the defendant resided or intended to reside for more than seven days because of a reportable conviction for rape of a child in the first degree, intentionally or knowingly failed to register with local law enforcement in that county." That's it, all we have to prove. . . . There's not some little something you're missing. That's it. That's common sense, That's the law. . . . You don't get much more similar to aggravated sexual assault of a child than intercourse with a child under 12. . . . Mr. Perkins says there's not penetration in there. Well, it's intercourse. Give me a break. So those are similar.

The jury found appellant guilty of failing to register and sentenced him to eighteen years' imprisonment and a $10,000 fine.

On appeal, appellant argued that the evidence was legally insufficient to support his

---

[13] The trial judge had already taken judicial notice of the Washington rape-of-a-child statute and determined, as a matter of law, that the Washington Class A felony was "substantially similar" to the Texas statute of aggravated sexual assault of a child under Tex. Penal Code § 22.021(a)(1)(b). This is not a fact question for the jury, but a legal question for the judge.

conviction because the State failed to show that, under Article 62.003(a),[14] the Department

of Public Safety (DPS) had determined that the Washington statute was substantially similar

to a Texas offense for purposes of Chapter 62. The court of appeals disagreed with

appellant's reading of the statute–a reading that would require DPS to survey every past and

present law from every domestic and foreign jurisdiction.[15] The court of appeals explained,

> If the legislature wished to define out of state convictions as the same or substantially similar to certain offenses only if the Department had made such a determination, it would have defined substantially similar offenses in that way. Instead, the legislature defined reportable and sexually violent offenses as specific Texas offenses and offenses under the laws of other jurisdictions without regard to a vetting or verification process by the Department.[16]

Because the records of appellant's prior Washington convictions showed that he had

---

[14] Article 62.003, the "DPS determination" statute provides the following:

(a)    For the purposes of this chapter, the department [of public safety] is responsible for determining whether an offense under the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice contains elements that are substantially similar to the elements of an offense under the laws of this state.

(b)    The department annually shall provide or make available to each prosecuting attorney's office in this state:

(1)    the criteria used in making a determination under Subsection (a); and

(2)    any existing record or compilation of offenses under the laws of another state, federal law, the laws of a foreign country, and the Uniform Code of Military Justice that the department has already determined to contain elements that are substantially similar to the elements of offenses under the laws of this state.

(c)    An appeal of a determination made under this article shall be brought in a district court in Travis County.

TEX. CODE CRIM. PROC. art. 62.03.

[15] *Crabtree v. State*, No. 12-09-00322-CR, 2011 WL 1204332, at *7 (Tex. App.–Tyler March 31, 2011) (not designated for publication) (noting the enormity of the duty of DPS to survey every law, past and present, from every U.S. and foreign jurisdiction under appellant's interpretation of the statute).

[16] *Id.*

committed rape of a child and child molestation and those records set out the elements of the Washington offense, the court of appeals found that the evidence was sufficient to prove that the elements of those offenses were substantially similar to the elements of a Texas sex offense for which lifetime reporting every ninety days was required.[17]

II.

Any analysis of the Texas sex-offender registration and notification statutes should begin with a short discussion of the development of the national sex-offender statutes.

## A.    The Federal Statutory Scheme.

California was the first state to enact a sex-offender registration statute in 1947, and in 1990, Washington was the first state to enact a sex-offender community notification statute.[18] "The idea was politically popular, and by 1993, twenty-four states, including Texas, enacted various versions of such statutes."[19] Congress got into the act, and in 1994, it passed the Jacob Wetterling Act with the intent "to prod all states to enact similar sex offender registration and community notification laws and to provide for a national registration system to handle offenders who move from one State to another."[20] The Act

---

[17] *Id.* at *9.

[18] *See Creekmore v. Att'y General of Texas*, 116 F. Supp. 2d 767, 770-71 (E.D. Tex. 2000).

[19] *Id.* at 771 (internal citation omitted). Texas originally enacted its program in 1991 and has expanded and amended it in almost every legislative session since then. *See Creekmore v. Att'y General of Texas*, 341 F. Supp. 2d 648, 654 (E.D. Tex. 2004) (noting biennial legislative enactments during the 1990s).

[20] *Creekmore*, 116 F. Supp. 2d at 771.

required states to ensure that their prison authorities informed a person who has been (a) convicted of a sex crime against a minor, (b) convicted of a "sexually violent offense," or (c) determined to be a "sexually violent predator" of his duty to register with local authorities wherever he moves before being released from custody.[21] The Act also specified minimum registration requirements for offenders and required states to criminalize the failure of sex offenders to register with local authorities.[22]

It has been noted that the "primary thrust" of the Wetterling Act "was to browbeat individual states into enacting and enforcing local sex offender registration laws by threatening to withhold federal highway funds, [but] the role of federal agencies has since expanded."[23] A helpful discussion of the early history of the relevant federal statutes may be found in the first of three federal opinions dealing with the Texas sex-offender registration requirement and the genesis of the "DPS determination" statute in the *Creekmore v. Attorney General of Texas* litigation.[24]

The 1996 Lychner Act added a new section to the federal law that required the

---

[21] *See* Wetterling Act at § 170101(a)(1)(A)-(B) & § 170101(b)(1); *see Creekmore*, 116 F. Supp. 2d at 771.

[22] *See* Wetterling Act at 170101(b)(3)(A)-(B) & § 170101(C); *see Creekmore*, 116 F. Supp. 2d at 771.

[23] *Creekmore v. Att'y General of Texas*, 138 F. Supp.2d 795, 798 n.4 (E.D. Tex. 2001). The federal act mandated that ten percent of a state's highway funds would be lost if that state failed to implement a federally-approved program for sex offender registration and notification. *See Creekmore*, 116 F. Supp. 2d at 772.

[24] *See* 116 F. Supp. 2d at 770-73.

Attorney General to establish a national database to track the whereabouts and movements of offenders who were subject to registration under the various federally-approved state statutes.[25] If a state had not enacted federally approved sex-offender programs, offenders were required to register directly with the FBI.[26] As President Clinton warned in signing the legislation that enacted the national sex-offender registry: "If you dare prey on our children, the law will follow you wherever you go–state to state, town to town."[27]

Under the most recent federal Sex Offender Registration and Notification Act (SORNA),[28] those who have been convicted of certain sex crimes in any state or federal jurisdiction are required to provide local authorities–in whatever state they reside in–with their names and other identifiers for inclusion in updated state and federal sex offender registries.[29] Under SORNA, the failure to register with the appropriate state authorities when

---

[25] *See id.* at 772.

[26] *Id.*

[27] Wayne Logan, *Horizontal Federalism in an Age of Interconnectedness*, 154 U. PA. L. REV. 257, 261 (2005) (quoting Ron Fournier, *Clinton Signs Law on Sex Offenders*, CHI. SUN-TIMES, May 18, 1996, at 12).

[28] 120 Stat. 590, 42 U.S.C. § 16901, *et seq.* (2006 ed.).

[29] *Id.* §§ 16912(a), 16913-16914, 16919(a) (2006 ed.); *see generally Reynolds v. United States*, 132 S.Ct. 975, 978 (2012) (describing SORNA and its requirements). According to the Court in *Reynolds*,

> The new federal Act reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems. The Act seeks to make those systems more uniform and effective. It does so by repealing several earlier federal laws that also (but less effectively) sought uniformity; by setting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders

one travels to a different state is a federal offense as well as a state offense.[30]

In sum, the federal SORNA program places great emphasis on having all sex offenders from every jurisdiction in the United States register in whatever local community they live, and that their names, addresses, and other identifiers are contained within the national FBI registry, subject to constant updating and monitoring so that such offenders cannot avoid law enforcement oversight by slipping from one state to another in search of a "clean slate."[31]

## B.    The Texas Statutory Scheme.

Texas enacted its first sex-offender registration and notification statutes in 1991[32] and has regularly amended them to ensure that the program meets minimum federal requirements.[33] They are now codified in Chapter 62 of the Code of Criminal Procedure.

---

to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act's registration requirements.

*Id.* (internal citations omitted). The Attorney General made the federal registration requirements retroactive and applicable to all sex offenders "convicted of the offense for which registration is required prior to the enactment" of SORNA on February 28, 2007. *Id.* at 979.

[30] 18 U.S.C. § 2250(a); *see Reynolds*, 132 S.Ct. at 978.

[31] *See* Wayne Logan, *Horizontal Federalism*, supra note 27, at 260; *see also Reynolds*, 132 S.Ct. at 982-83 (quoting supporters of SORNA to the effect that "[t]here currently are over 100,000 sex offenders in this country who are required to register but are 'off the system.' They are not registered. The penalties in this bill should be adequate to ensure that these individuals register")[.]

[32] *See* the Texas Sex Offender Registration Program, Act effective Sept. 1, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Texas Sess. Law Serv. 2029-32. That law was Article 6252-13c.1, sec. 7, of the Texas Revised Statutes.

[33] *Creekmore*, 341 F. Supp. 2d at 654.

Under the 1991 law, a person who had been convicted in Texas of aggravated sexual assault, sexual assault, incest, indecency with a child, or had been convicted four times of indecent exposure had a reportable offense and was required to register with the local law enforcement authorities.[34] Penal authorities were required to notify a sex offender of his duty to register at least thirty days before the offender was released from prison.[35] It was a Class A misdemeanor for a person to fail to comply with that registration requirement.[36]

In 1995, the statute was amended to require registration under the Act for those who had been convicted out of state "for an offense containing elements that are substantially similar to the elements" of those Texas offenses for which sex-offender registration was required.[37] After 1995, trial and appellate courts decided, as a matter of law, whether the out-of-state conviction was "substantially similar" to the analogous Texas sex offense.[38] Courts have regularly taken judicial notice concerning the "substantial similarity" between statutes

---

[34] TEX. CIV. STAT. art. 6252-13c.1, § 1, 2.

[35] *Id.* § 3. If the person had not been sent to prison, then the trial judge was required to provide the sex offender with notification of the registration requirement at the time he pronounced sentence. *Id.*

[36] *Id.* § 7.

[37] *See* Acts 1995, 74th Leg., R.S., ch. 258, § 1, 2 (amending Art. 6252-13c.1, § 1, by adding subsections (I) and (J)). By that time, the list of sex offenses for which registration was required had grown considerably. *See id.* §§ (A)-(D), (F).

[38] *See Ex parte Warren*, 353 S.W.3d 490, 496 (Tex. Crim. App. 2011); *Prudholm v. State*, 333 S.W.3d 590, 596-600 (Tex. Crim. App. 2011); *Ex parte White*, 211 S.W.3d 316, 318 (Tex. Crim. App. 2007); *Hardy v. State*, 187 S.W.3d 232, 236 (Tex. App.—Texarkana 2006, pet. ref'd).

as a question of law for the court, not a question of fact for the jury.[39]

The various states have taken different approaches in complying with SORNA and its out-of-state sex-offender registration requirements. The "internal approach" requires that out-of-state convictions satisfy the eligibility requirements of the forum state's registration law.[40] Thus, the out-of-state conviction must be "reasonably" or "substantially" the same or "similar to" a registerable offense in the forum.[41] Under the "external approach," the forum state gives deference to the legal determination of the convicting state.[42] Thus, if the convicting state considers the offense one that is subject to sex-offender registration, then the forum state will do so also. The Texas sex-offender registration program takes both an internal and external approach to out-of-state convictions.

Under Article 62.001(5)(H), a "reportable conviction" may be "a violation of the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice for or based on the violation of an offense containing elements that are substantially

---

[39] *See Hardy*, 187 S.W.3d at 236 ("Statutory interpretation is a question of law to be determined by the trial court, not the jury" in deciding whether an out-of-state sexual offense is "substantially similar" to a Texas offense); *see also Rodriguez v. State*, 227 S.W.3d 842, 845 (Tex. App.– Amarillo 2007, no pet.) (determining whether defendant's prior out-of-state conviction was "substantially similar" to the Texas offense of aggravated sexual assault was a question of law involving the interpretation of statutes and is not submitted to a jury for resolution).

[40] *See* Wayne Logan, *Horizontal Federalism*, supra note 27, at 261.

[41] *Id.*

[42] *Id.*

similar to the elements of" an enumerated Texas sex offense.[43] Under that statute, Texas, like 35 other states, has taken an "internal approach" by comparing the elements of its sex offenses to the elements of the extra-jurisdictional conviction.[44] If those elements are substantially similar, then the offender is subject to the requirements of Chapter 62, the Texas Sex Offender Registration Program.

But suppose that the elements of the out-of-state conviction are *not* substantially similar to the elements of a Texas sex offense. Perhaps they share nothing in common. A person with such a conviction may still be subject to the registration requirements of Chapter 62 under the "external approach" of Article 62.052.[45] Under this statute, the Texas Department of Public Safety and another jurisdiction may enter into a reciprocal registration agreement that requires the out-of-state sex offender to register in Texas (and a Texas sex

---

[43] TEX. CODE CRIM. PROC. Art. 62.001(5)(H).

[44] Wayne Logan, *Horizontal Federalism*, supra note 27, at 261.

[45] TEX. CODE CRIM. PROC. Art. 62.052 ("Registration: Extrajurisdictional Registrants"). That provision reads as follows:
> (a) An extrajurisdictional registrant is required to comply with the annual verification requirements of Article 62.058 in the same manner as a person who is required to verify registration on the basis of a reportable conviction or adjudication.
> (b) The duty to register for an extrajurisdictional registrant expires on the date the person's duty to register would expire under the laws of the other state or foreign country had the person remained in that state or foreign country, under federal law, or under the Uniform Code of Military Justice, as applicable.
> (c) The department may negotiate and enter into a reciprocal registration agreement with any other state to prevent residents of this state and residents of the other state from frustrating the public purpose of the registration of sex offenders by moving from one state to the other.

offender to register in that jurisdiction) to prevent offenders "from frustrating the public purpose of the registration of sex offenders by moving from one state to another."[46] Thus, Texas, like sixteen other states,[47] will defer to the convicting state and require such offenders to register in Texas for the time period prescribed by the convicting state's registration scheme. This statute, like those of the other "external approach" states, is consistent with Congress's and the Texas Legislature's intent to expand the scope of registration coverage for out-of-state sex offenders and ensure that all sex offenders will be registered and monitored if they move from state to state or town to town.

By enacting a comprehensive internal and external approach toward out-of-state sex-offender registration requirements, the Texas Legislature has pursued its "public purpose of the registration of sex offenders" to ensure that this state does not become a haven those who would frustrate that purpose "by moving from one state to another."[48]

**C.    Article 62.003. Determination Regarding Substantially Similar Elements of Offense.**

In 2001, six years after it had amended the sex-offender registration statute to include mandatory registration for out-of-state sex offenses that were substantially similar to Texas sex offenses, the Legislature enacted Article 62.003, the "DPS Determination" statute, in

---

[46] *Id.* art. 62.052(c).

[47] Wayne Logan, *Horizontal Federalism*, supra note 27, at 287.

[48] TEX. CODE CRIM. PROC. art. 62.052(c).

explicit reaction[49] to the long-lasting *Creekmore* litigation.    That new statute was enacted

to ensure that a person with an out-of-state conviction had an administrative and judicial

forum in which to challenge an assertion by local law enforcement that he had a reportable

sex-offense conviction and was, therefore, required to register under Chapter 62.  But that

administrative statute has nothing to do with the definition of a "failure to register" offense,

and a DPS determination of substantial similarity is not an element of any criminal offense.

The *Creekmore* litigation centered around Meredith Creekmore, who was convicted

of sex offenses under the Uniform Code of Military Justice (UCMJ) for sexually abusing his

daughter when she was two to four years of age.[50]  He was sentenced to six years'

imprisonment.  When he was released from prison, the Bureau of Prisons (BOP) notified him

that he was required to register in Texas as a sex offender.[51]  BOP also notified the Sheriff

---

[49] The House Research Organization Bill analysis to HB 2113, which added Article 62.003 to the Sex Offender Registration Program, notes that supporters of the bill state,
> CSHB 2113 would clarify current language requiring registration for persons who committed sex offenses in other states or who violated federal or military law.  It would make clear who decides whether an offense from another jurisdiction would trigger Texas registration requirements and would allow appeals of these decisions.  These changes are necessary to address concerns about the Texas law that were raised in a lawsuit against the Beaumont Police Department.

Opponents of the bill argued that
> DPS may not be the proper entity to decide whether an offense from another jurisdiction would trigger Texas registration requirements.  It is unclear whether an offender would go directly to DPS for a decision or whether this would be the responsibility of a local law enforcement agency.  CSHB 2113 should require that the decision maker be trained and competent to make the decision.

[50] 341 F. Supp. 2d at 651-52.

[51] 116 F. Supp. 2d at 769.

of Jefferson County, the Attorney General of Texas, and the Beaumont Chief of Police of Creekmore's release and of his mandatory duty to register every ninety days for the rest of his life.[52]  Creekmore registered, under protest, as a sex offender and then filed a civil lawsuit, arguing that the Texas Program was infirm because, *inter alia*, "it does not indicate who determines whether an offense under UCMJ is substantially similar to a listed offense under the Texas Penal Code" and "it does not provide any process by which an individual determined to have a reportable conviction may challenge that determination[.]"[53] In other words, Creekmore claimed that his federal due-process rights were violated because he did not have any legal way by which to challenge the Beaumont police chief's notification that he was required to register as a sex offender.[54]  That's the problem that Article 62.003 solved.[55]

The federal district judge noted in his final opinion that the Texas Legislature had solved the legitimate question that Creekmore raised by amending two statutes:

---

[52] *Id.*

[53] *Id.*

[54] The federal district judge noted, in granting Creekmore prospective relief by preventing the Beaumont authorities from "continuing to subject Creekmore to registration and public dissemination of information" until he has been given the "basic procedural safeguards of notice, opportunity to b hear, and appellate review" of the determination that he had a "reportable conviction" under Texas law.  341 F. Supp. 2d at 671.

[55] That problem has, however, been solved under SORNA for anyone who, like Creekmore or appellant, was informed that he was required to register as a sex offender before moving from the convicting jurisdiction.  Article 62.003 still serves a useful purpose, however, for those who are not required to register in their convicting state or who were convicted and moved to Texas before the convicting state required sex-offender registration.

(1)    "Article 62.0101 [now 62.003], enacted in 2001, delegates to the TDPS the responsibility for determining whether a UCMJ offense contains elements substantially similar to elements of a Texas offense"; and

(2)    "Article 62.021 [now 62.052], amended in 2001 and 2003, now requires that any person required to register as a sex offender *under federal law or the Uniform Code of Military Justice* must register in Texas if not otherwise required to register under TSORP."[56]

---

[56] *Creekmore*, 341 F. Supp. 2d at 655.  Former article 62.021 ("Out-of-State Registrants"), read,

(a) This article applies to a person who:
    (1)    is required to register as a sex offender under:
        (A)    the laws of another state with which the department has entered into a reciprocal registration agreement;
        (B)    federal law or the Uniform Code of Military Justice; or
        (C)    the laws of a foreign country; and
    (2)    is not otherwise required to register under this chapter because:
        (A)    the person does not have a reportable conviction for an offense under the laws of the other state, federal law, the laws of the foreign country, or the Uniform Code of Military Justice containing elements that are substantially similar to an offense requiring registration under this chapter; or
        (B)    the person does not have a reportable adjudication of delinquent conduct based on a violation of an offense under the laws of the other state, federal law, or the laws of the foreign country containing elements that are substantially similar to an offense requiring registration under this chapter.

(b) A person described by Subsection (a) is required to comply with the annual verification requirements of Article 62.06 in the same manner as a person who is required to verify registration on the basis of a reportable conviction or adjudication.

(c) The duty to register for a person described by Subsection (a) expires on the date the person's duty to register would expire under the laws of the other state or foreign country had the person remained in that state or foreign country, under federal law, or under the Uniform Code of Military Justice, as applicable.

(d) The department may negotiate and enter into a reciprocal registration agreement with any other state to prevent residents of this state and residents of the other state from frustrating the public purpose of the registration of sex offenders by moving from one state to the other.

That statute is now art. 62.052, although its definition portion was moved to art. 62.001(10).

Thus, the Texas Legislature, motivated in part by the insistent prodding of Congress to ensure that sex offenders convicted in one state cannot travel to another state to obtain a "clean slate,"[57] enacted one statute to ensure that a person convicted of an out-of-state sex offense had a judicial forum in which to challenge the applicability of Chapter 62 to his prior conviction and enacted a separate statutory mechanism for extra-jurisdictional sex-offender registration. Therefore, even if the elements of the out-of-state offense are not substantially similar to the elements of a Texas sex offense, registration under Chapter 62 may be required if registration is required under federal law, foreign law, or another state's law when Texas has a reciprocal registration agreement with that state.[58]

Thus, because Creekmore was required to register as a sex offender under the UCMJ (and he had been informed of that federal-law requirement by the BOP before his release from prison) and Article 62.021 [now 62.052], requires Texas registration if it is required under the UCMJ, it would make no difference whether the elements of the UCMJ for which Creekmore was convicted are similar to those of an offense under Texas law.[59]

---

[57] See id. subsection (d).

[58] See id. subsection (a).

[59] See Creekmore, 341 F. Supp. 2d at 670-71. The federal district judge concluded that granting Creekmore temporary injunction relief
> will not preclude law enforcement officials from subjecting Creekmore to registration . . . upon providing the process now afforded under Article 62.0101.
> It will not preclude state officials from requiring Creekmore to register under any other alternative provision of TSORP, including Article 62.021, which may apply in their considered judgment.

Id. (footnote omitted).

In sum, a convicted sex offender who moves to Texas will be required to register in Texas if (a) the elements of the prior offense are "substantially similar" to those of a reportable Texas sex offense *or* (2) the person is required to register as a sex offender under the UCMJ or federal or foreign law, or the laws of another state with which Texas has a reciprocal registration agreement.[60]

Due process is satisfied under option (a) because a person whom local law enforcement has ordered to register may seek a determination from DPS that the elements of his out-of-state conviction are not "substantially similar" to the elements of an analogous Texas sex offense.[61] And, if unsatisfied, he may file a civil lawsuit in Travis County for judicial review of the DPS determination.[62] This administrative system has been successfully employed by at least two plaintiffs challenging the registerability of their out-of-state sex

---

[60] The Third Court of Appeals recently noted and distinguished these two different statutory methods–a "substantially similar" reportable offense under Article 62.001(5)(H) or as an "extraterritorial registrant" under Art. 62.001(10)–by which a person with an out-of-state conviction may be required to register as a sex offender under Chapter 62. *Tex. Dept. of Public Safety v. Anonymous Adult Tex. Resident*, 382 S.W.3d 531, 534 n.2 (Tex. App.–Austin 2012, n.p.h.).

[61] The DPS determination statute is not designed to give out-of-state offenders direct, public notice because DPS is not required to publicly disseminate its determinations of "substantial similarity." It is required only to annually notify "each prosecuting attorney's office" of the criteria that it uses in making determinations and of its existing record of previous determinations of "substantial similarity." TEX. CODE CRIM. PROC. art. 62.003(b).

[62] Or, if DPS determines that the out-of-state sex conviction is not "substantially similar" to a Texas one, the local law enforcement authority may file an appeal in Travis County. TEX. CODE CRIM. PROC. Art. 62.003(c).

convictions.[63] In each case, the plaintiff had a prior out-of-state conviction that DPS had administratively determined was "substantially similar" to a reportable offense under Texas law.[64] In each case, the plaintiff filed suit in a Travis County district court under Article 62.003(c).[65] Both plaintiffs prevailed at the trial court level with the judge finding, as a matter of law in each case, that the out-of-state offenses were not substantially similar to Texas offenses for purposes of sex-offender registration under Chapter 62.[66] In each case, DPS appealed to the Third Court of Appeals and again lost.[67] This civil administrative system has worked exactly as intended in providing a forum for deciding whether a person

---

[63] *Tex. Dept. of Public Safety v. Garcia*, 327 S.W.3d 898 (Tex. App.–Austin 2010, pet. denied) (alleged sex offender's Oregon conviction for having contributed to the sexual delinquency of a minor did not contain elements substantially similar to the Texas Penal Code offense of sexual assault; plaintiff's conviction was not a reportable or registerable offense under Chapter 62); *Anonymous Adult*, 382 S.W.3d at 539 (elements of person's convictions for indecent assault and battery were not "substantially similar" to Texas offense of sexual assault; plaintiff's conviction was not a reportable offense under Chapter 62).

[64] *Garcia*, 327 S.W.3d at 901; *Anonymous Adult*, 382 S.W.3d at 532.

[65] *Id.* The plaintiff in *Anonymous Adult* first registered under Chapter 62 and then filed suit.

[66] *Garcia*, 327 S.W.3d at 901; *Anonymous Adult*, 382 S.W.3d at 532.

[67] *Garcia*, 327 S.W.3d at 906-07; *Anonymous Adult*, 382 S.W.3d at 539. It was significant to the *Garcia* court that DPS had not shown that the plaintiff was required to register as a sex offender in Oregon, noting,

> Had Garcia shown a the hearing that he was not required to register in Oregon, the Department's determination would create the anomalous situation in which a defendant was required to register in Texas for a conviction that was neither registerable in Oregon nor an "offense" here[.]

*Id.* at 903 n.1. Thus, if a person can show that his conviction did not require sex-offender registration in the original jurisdiction, then he need not register in Texas unless the elements of the out-of-state offense are "substantially similar" to a reportable offense in Texas. And the person may file a civil lawsuit in Travis County disputing any such determination.

has a "reportable" out-of-state sex-offense conviction. The statute says nothing, however, about a person who is required to register under SORNA or under the extra-jurisdictional statute. For them due process is provided in a different manner.

Due process is satisfied under option (b), the external authority of SORNA and the extra-jurisdictional statute, because a person whom local law enforcement has ordered to register in Texas was already required to register as a sex offender in the jurisdiction in which he was originally convicted. His due-process rights were satisfied by notification of the registration requirement in that convicting jurisdiction, and his duty to register and the duration of that duty is determined by the law of the convicting jurisdiction.[68] Under Article 62.052, Texas is doing nothing more than enforcing the registration mandate of the convicting jurisdiction and preventing the sex offender "from frustrating the public purpose of the registration of sex offenders by moving from one state to another."[69] Furthermore, federal law requires a person who has been convicted of a registerable sex offense in one state–such as a person who has been convicted of rape of a child in Washington–to register with local law enforcement if he moves in interstate commerce to Texas.[70] Article 62.052

---

[68] TEX. CODE CRIM. PROC. art. 62.052(b).

[69] Id. art. 62.052(c).

[70] See United States v. Whaley, 577 F.3d 254, 256 (5th Cir. 2009) (defendant, who was convicted in Kansas of aggravated sexual battery and required to register as a sex offender under Kansas law upon release from prison, was required to register with local law enforcement when he moved to Texas; when he failed to register in Texas he violated 18 U.S.C. § 2250(a) by traveling in interstate commerce and knowingly failing to register and update his registration as required under SORNA).

requires all extra-jurisdictional registrants who are required by federal law (SORNA) to register in Texas to do so even if the elements of their out-of-state offenses are not "substantially similar" to an analogous Texas offense.

III.

In this case, appellant argues that the evidence to prove the offense of failing to register as a sex offender under Chapter 62 was legally insufficient because the State did not prove that DPS had made a prior determination that the elements of rape of a child under Washington law are "substantially similar" to the elements of aggravated sexual assault of a child under Texas law.[71] He argues that a DPS determination is an essential element because it "ensures that sex offender registration is applied across Texas in a standardized manner that prevents discrimination, an arbitrary application of the law, and disparate results for similarly situated defendants."

But if appellant did not believe that he was supposed to register as a sex offender, he could have complained to the Washington authorities when he was originally ordered to register with local law enforcement in that state after he was released from prison in 1998.

Appellant cannot claim that he did not receive due-process notification of his lifetime obligation to register as a sex offender regardless of where in the United States he resides.

---

[71] The State argues that DPS had made such a determination and had sent a letter noting that determination addressed to Texas Law Enforcement Agencies on September 4, 2009, a few days before appellant's trial commenced, but that letter was not introduced as a court's exhibit and the trial judge did not take judicial notice of it at the time of trial. It is only in its Motion for Rehearing that the State attaches a copy of the letter, and therefore I will not consider that letter as proof of the fact it asserts.

The testimonial and documentary evidence in this case shows that he was repeatedly warned by Washington authorities of his lifetime obligation to register every ninety days with local law enforcement in whatever county he lived. He did not need to guess about whether or not the law required him to register as a sex offender. That requirement included a county in Texas as well as a county in Washington. Thus, all sex offenders who are convicted of rape of a child in Washington and told that they are required to register as sex-offenders for their lifetime and who then move to Texas will be treated in a "standardized manner that prevents discrimination, an arbitrary application of the law, and disparate results for similarly situated defendants."

In this case, the trial judge properly took judicial notice of the Washington statute for rape of a child, the Texas statute of aggravated sexual assault of a child, the Washington Supreme Court decision concerning appellant's conviction, appellant's Washington judgment and his signature attesting that he had been fully admonished of his lifetime sex-offender registration requirement in whatever county he lived. Although it was unnecessary given appellant's duty to register under Article 62.052, neither the trial judge nor the court of appeals erred in concluding, as a matter of law, that the elements of the Washington rape-of-a-child offense are "substantially similar" to the elements of the Texas offense of aggravated sexual assault of a child. I therefore respectfully dissent to the Court's failure to grant the State's Motion for Rehearing.[72]

---

[72] On original submission, the majority stated that the Texas Legislature should amend Article 62.003 if it disagreed with the Court's interpretation of that statute. *Crabtree v. State,*

Filed: January 16, 2013
Publish

---

___ S.W.3d ___, 2012 WL 5348220, *8 (Tex. Crim. App. October 31, 2012). To ensure that Texas remains in compliance with SORNA and does not jeopardize any of its federal highway funds, the Legislature could easily amend Article 62.003 by adding a new subsection (d):

(d) This article is intended only for purposes of an administrative proceeding. A determination by the department is not a condition precedent to an offender's registration requirement nor is it an element of any criminal offense.