

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00090-CR

SIDNEY PRICE LAWSON                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1304582D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Sidney Price Lawson appeals his conviction for the offense of continuous sexual abuse of a young child. In three issues, Lawson argues that the trial court erred by not including in the jury charge a lesser-included offense instruction for indecency with a child by exposure, that the trial court erred by

----

[1]See Tex. R. App. P. 47.4.

designating the forensic interviewer as an outcry witness, and that the evidence is insufficient to support the jury's verdict. We will affirm.

## II. BACKGROUND

After Daughter[2] revealed to her biological mother, Cari Mauk, that her biological father, Lawson, had "touched her" in her "no-no areas," Mauk contacted the police. The police investigation resulted in the State charging Lawson with the continuous sexual assault of a young child.

At trial, Mauk testified that she met Lawson in 1999 when she was nineteen years old and that she began living with Lawson and his Wife in 2001. According to Mauk, Wife was not supportive at first of the living arrangement, but eventually Mauk, Lawson, and Wife all became sexual partners with one another, and the three lived with their collective four children as a "family." Mauk said that she had two children with Lawson, a son and Daughter, and that Wife also had two children with Lawson, both boys. By Mauk's account, the children referred to both her and Wife as "mom." Toward the end of the "family" arrangement in August 2011, Mauk and Wife had become committed to each other, but due to "too many problems," the women had "drifted apart" from Lawson.

Mauk said that while she was working during the evening shift on February 29, 2012, she received a call from Wife. What Wife told Mauk caused her to have a "panic attack" because Daughter had told Wife something

---

[2]In order to protect the minor child, pseudonyms are used where possible. Tex. R. App. P. 9.10.

disturbing about Lawson's behavior with Daughter. After Mauk calmed down, she immediately drove home, and she, Wife, and Daughter went somewhere private so Daughter could tell Mauk what she had told Wife. Mauk said that Daughter told her that Lawson had repeatedly "touched her in her no-no areas" but that Daughter was not more specific. Mauk said that she did not inquire further because she did not want to upset Daughter. Instead, Mauk said that she went home and called the police.

Daughter, who was twelve years old at the time of trial, testified that on February 29, 2012, she told Wife, "[M]y dad touched me." Daughter said that the reason she told Wife at the time that she did was because the family had moved away from Lawson and that she "wasn't afraid anymore."

Daughter averred that she did not remember the day Lawson began to "touch" her, but she recalled how one day Lawson told her to go to the parents' bedroom. From there, Lawson pushed Daughter onto the bed and told her to take her clothes off. After she disrobed, Lawson then touched Daughter in her "no-no places." Specifically, according to Daughter, Lawson touched her chest area, sexual organ area, and bottom. Daughter said that when Lawson touched her sexual organ, he digitally penetrated it. Daughter also said that during this episode, Lawson kissed her on her lips.

Daughter averred that incidents like these occurred multiple times "[o]ver a period of years," that Lawson routinely touched her sexual organ and chest area, and that he routinely required Daughter to masturbate him to ejaculation.

3

Daughter specifically said that Lawson would routinely "take off his pants and his boxers, and he would just tell [her] to touch him . . . . He would make [her] grab it." Daughter said that Lawson would then tell her to move her hand "up and down" until she saw "[w]hite stuff" come out of his penis. Daughter said that she did not know how many times these incidents occurred but that they had occurred more than five times.

By Daughter's account, Lawson instructed her not to tell either of her "moms" about what Lawson would do to her or that she would get in trouble. She also averred that Lawson would buy her more things than he bought the three boys and that he would take her "more places" so that he could be alone with her. Daughter said that the incidents ceased when Lawson moved away just shy of her ninth birthday.

The State called Lindsey Dula, a forensic interviewer for Alliance for Children. Outside the presence of the jury, and after Lawson objected to Dula as a witness, the State and Lawson questioned Dula to determine whether she was the proper outcry witness to testify at trial. Dula averred that Daughter had described to her in detail how Lawson had kissed her, how he had made her masturbate him, how she had described and then drew a picture of Lawson's penis, how he had touched her chest and digitally penetrated her sexual organ, and how Daughter described where the first incident occurred. The trial court overruled Lawson's objection and allowed Dula's testimony to be heard before the jury.

4

In the jury's presence, Dula testified that in March 2012 she interviewed Daughter. Dula said that Daughter was "very reluctant to talk." According to Dula, Daughter eventually described in detail how Lawson had touched her chest and sexual organ area, how Lawson had kissed Daughter using his tongue, and how he had digitally penetrated her sexual organ. Dula said that Daughter told her where the first incident occurred, who was home, and roughly how old she was at the time. Dula said that Daughter described several incidents, including multiple times in which Lawson required Daughter to masturbate him to ejaculation. Dula averred that she could not determine from the interview how many times these incidents occurred, but Dula described the frequency as "chronic."

Brenda Crawford, a sexual assault nurse examiner for Cook's Children Hospital, testified that she examined Daughter on April 4, 2012. Crawford said that during her examination, Daughter said to her, "My dad did it." Crawford said that she then asked Daughter what her dad's name was, and Daughter said, "Sidney Lawson. He touched me in my private parts." Daughter described to Crawford how Lawson had taken her and his clothes off, how he had required her to masturbate him to ejaculation, and how he had told her not to tell anyone. Daughter also told Crawford that Lawson showed her pornographic magazines.

Lawson testified in his defense. Lawson denied ever having molested Daughter and expressed disbelief as to why he "would be accused of it." Specifically, Lawson denied that he had ever told Daughter to undress; he denied

5

that he ever had her masturbate him; and he denied ever having touched her in an inappropriate way. Lawson expressed love for his children, including Daughter, and described how the last time he saw her at a scheduled visitation she was excited to see him, she hugged him, she played with his hat, and she told him about Girl Scouts.

On cross, Lawson admitted that when he was asked by Child Protective Services about Daughter's allegations, he reported to CPS a situation that happened between his oldest son and Daughter. Lawson said that Daughter was lying about her allegations.

Wife also testified. Wife said that Lawson treated Daughter differently than his sons and that he would buy Daughter gifts and not buy his sons gifts. Wife recalled when Daughter told her about Lawson's inappropriate behavior. According to Wife, Daughter did not give much detail, only stating that Lawson touched her inappropriately on more than one occasion.

During the charge conference, Lawson requested that the trial court include an instruction on indecency with a child as a lesser-included offense to the charge of continuous sexual abuse of a young child. The trial court overruled Lawson's request. The jury returned a verdict of guilty, and after a punishment hearing, the jury assessed punishment at thirty years' confinement. The trial court entered judgment accordingly, and this appeal followed.

## III. DISCUSSION

### A.  Jury Charge

In his first issue, Lawson argues that the trial court committed reversible error by denying his request for the inclusion of a lesser-included offense instruction on the charge of indecency with a child.  Specifically, Lawson argues that the evidence at trial supported an instruction of indecency with a child by exposure.  The State argues that Lawson was not entitled to the instruction because there is no evidence in the record to indicate that Lawson committed only indecency with a child.  We agree with the State.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction.  *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).  First, the lesser offense must come within article 37.09 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense.  *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.  The evidence must be evaluated in the context of the entire record.  *Moore*, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the appellant of the greater

offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

A charge on the lesser-included offense is not required when the defendant presents no evidence or presents evidence that no offense was committed and there is no evidence otherwise showing that the defendant is guilty of a lesser-included offense. *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).

A person commits the offense of indecency with a child by exposure if, with a child younger than seventeen years and not the person's spouse, the person exposes the person's anus or any part of the person's genitals, knowing the child is present, with the intent to arouse or gratify the sexual desire of any person or causes the child to expose the child's anus or any part of the child's genitals. Tex. Penal Code Ann. § 21.11(a), (b-1) (West 2011).

Here, assuming without deciding that indecency with a child by exposure is a lesser-included offense of the State's charge that Lawson committed continuous sexual assault of a young child, there is simply no evidence in the record that would have permitted the jury to rationally find that if Lawson was guilty, he was guilty only of indecency with a child by exposure. *See Hall*, 225 S.W.3d at 536. Each witness who testified to what Daughter reported, averred that Lawson had subjected Daughter to a series of sexually abusive incidents.

8

Each of the incidents described entailed Lawson touching Daughter's sexual organ or chest, or the incidents entailed Lawson having Daughter touch his penis. Furthermore, Lawson categorically denied that he had ever committed a single act described by the testimony of others.

In short, Lawson was not entitled to a charge on the lesser-included offense of indecency with a child by exposure because he presented only evidence that no offense was committed, and there is no record evidence otherwise showing that Lawson was only guilty of indecency with a child by exposure. *See Lofton*, 45 S.W.3d at 652; *see also Brown v. State*, 381 S.W.3d 565, 583 (Tex. App.—Eastland 2012, no pet.) (holding that defendant convicted by jury of continuous sexual abuse of a young child was not entitled to lesser-included charge of indecency with a child because there was no record evidence that defendant only committed indecency with a child). We overrule Lawson's first issue.

### B.    Outcry Witness

In his second issue, Lawson argues that the trial court erred by allowing Dula, the forensic interviewer, to testify to what Daughter had told her during her interview. Specifically, Lawson argues that the trial court improperly allowed two outcry witnesses to testify, Mauk and Dula. The State responds that Daughter expressed only a general allusion to sexual abuse to Mauk, but Daughter expressed the how, when, and where the sexual abuse occurred to Dula, and thus, Dula was the proper outcry witness. We agree with the State.

9

We review a trial court's decision to admit an outcry statement under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) (referring to article 38.072 as "a rule of admissibility of hearsay evidence" and describing its purpose). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App. Houston [14th Dist.] 2004, pet. ref'd). But because the trial court has no discretion in determining the applicable law, the trial court abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004).

Hearsay is not admissible except as provided by statute or by the rules of evidence. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). Article 38.072 establishes an exception to the hearsay rule, applicable in proceedings for prosecution of certain listed offenses, for statements made by a child or disabled victim "to the first person, 18 years of age or older, other than the defendant, to whom the [victim] . . . made a statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(3) (West Supp. 2016). To be admissible under article 38.072, outcry testimony must be elicited from the first adult to whom the outcry was made. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). Admissible outcry witness testimony is not person-specific but event-specific. *Id.*; *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth

2003, pet. ref'd). And article 38.072 requires more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91.

To be a proper outcry statement, the child's statement to the witness must describe the alleged offense, or an element of the offense, in some discernible manner. *See id.* As a general rule, in order to describe the alleged offense, the statement must contain the "how," "when," or "where" the offense allegedly transpired. *See Brown v. State*, 381 S.W.3d 565, 572 (Tex. App.—Eastland 2012, no pet.) (citing *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet ref'd)) ("On the other hand, the child's statements to Burkett regarding how, when, and where appellant touched her clearly satisfied the statutory requirements.").

Here, the record does not support Lawson's contention that the trial court allowed two outcry witnesses to testify. Both Mauk's and Daughter's testimony demonstrate that Daughter told Mauk nothing more than a general allusion that something in the area of sexual abuse had occurred and not a clear description of the charged offense, the continuous sexual abuse of Daughter. Daughter's statements that Lawson had touched her "no-no areas" more than once gives no answer to the questions of how, when, and where the continuous sexual abuse occurred.

In contrast, Daughter told Dula that the first incident occurred in the parents' bedroom at the family's home. Daughter told Dula in detail how Lawson had her disrobe, how he touched her chest and sexual organ, how he had

11

digitally penetrated her sexual organ, how he had kissed her on her mouth and inserted his tongue in her mouth, and how he required her to masturbate him to ejaculation. Daughter also drew a picture of Lawson's penis for Dula and explained how "white stuff" had come from "where he pees." Daughter told Dula how this had occurred frequently, with most of the incidents occurring when she was in third grade.

According to the record, Dula was the first person over eighteen years of age to whom Daughter, in some discernible manner, described the how, when, and where of the offense charged in the indictment. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a); *Garcia*, 792 S.W.2d at 91. We conclude the trial court did not abuse its discretion in designating Dula as the proper outcry witness. Therefore, we overrule Lawson's second issue.

### C. Sufficiency of the Evidence

In his third issue, Lawson argues that the evidence is insufficient to support his conviction. Specifically, Lawson argues that the evidence is insufficient because "[t]he only uncontroverted direct evidence on point came from the testimony of the alleged victim herself and witnesses testifying to what she told them during the investigation." We disagree that the evidence is insufficient.

#### 1. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v.*

13

*State,* 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

### 2. Continuous Sexual Assault of a Child

A person commits the offense of continuous sexual abuse of a young child if

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

Tex. Penal Code Ann. § 21.02(b) (West Supp. 2016).

14

Either a child complainant's testimony or an outcry witness's testimony is sufficient alone to support a conviction for sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a) (West Supp. 2016) (providing conviction for sexual assault of a child is "supportable on the uncorroborated testimony of the victim"); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (recognizing outcry testimony alone can be legally sufficient evidence to support a conviction for sexual assault of a child); *see also Bargas v. State*, 252 S.W.3d 876, 888–89 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding child's testimony regarding abuse alone was sufficient to support defendant's conviction for aggravated sexual assault despite child's use of "unsophisticated terminology"); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding child's outcry statement alone was sufficient to support defendant's conviction for aggravated sexual assault).

In this case, both Daughter and Dula, as the outcry witness, testified to incidents that occurred "[o]ver a period of years" wherein Lawson touched Daughter's sexual organ and chest area and wherein Lawson required Daughter to masturbate him to ejaculation. Daughter specifically said that Lawson would routinely "take off his pants and his boxers, and he would just tell [her] to touch him . . . . He would make [her] grab it." Daughter said that Lawson would then tell her to move her hand "up and down" until she saw "[w]hite stuff" come out of his penis. Daughter said that these events occurred when she was in elementary

15

school and when she was younger than eight years old. Dula's testimony echoed Daughter's testimony.

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found that Lawson committed two or more acts of sexual abuse during a period exceeding thirty days at the time that Lawson was seventeen years of age or older and Daughter was a child younger than fourteen years of age. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. We overrule Lawson's third issue.

## IV. Conclusion

Having overruled all three of Lawson's issues, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 8, 2016