

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00350-CR

_____

BRANDON KEONI RICKARD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1478001D

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted Appellant Brandon Keoni Rickard of two counts of aggravated sexual assault of a child younger than fourteen years of age and assessed his punishment at eighteen years' and six months' confinement. The trial court sentenced Rickard accordingly and ordered that his sentences be served consecutively. Rickard brings a single point on appeal, challenging the sufficiency of the evidence supporting his conviction. Because the evidence is sufficient to support the jury's verdict, we affirm the trial court's judgments.

## II. BACKGROUND

## A. Outcry, Examination, Interview, and Mother's Testimony

At the time of the offenses, Rickard lived in a Fort Worth apartment in Tarrant County with his young daughter, Bailey; the complainant, Jane; and the girls' mother, Alice.[1] On August 7, 2016, Alice was arrested for committing the offense of domestic violence against Rickard. Within a few days, an investigator for the Department of Family and Protective Services, Yolanda Johnson, screened Jane and Bailey to determine whether the children were living in a safe environment. While answering Johnson's questions, Jane initially disclosed that Rickard had touched her "private

---

[1]We use fictitious names to refer to the complainant and her family members to protect the complainant's identity. *See* Tex. R. App. P. 9.8 & cmt., 9.10; 2nd Tex. App. (Fort Worth) Loc. R. 7.

parts . . . on top of [her] clothes." Before Johnson left to speak with Alice, Jane grabbed Johnson and told her that Rickard had also touched her "under [her] clothes . . . with his penis and his fingers." Johnson wrote down Jane's statements.[2]

Fort Worth Police Detective Ebony Bryan was assigned to Jane's case on August 17, 2016, and later observed Jane's September 1, 2016 forensic interview. Bryan understood that Jane's assaults occurred close in time to the forensic interview, and based on her investigation, Bryan sought an arrest warrant for Rickard. In her probable-cause affidavit, Bryan detailed Jane's forensic-interview statements and commented that Jane "was consistent through her outcry." Bryan did not seek a search warrant to obtain a sample of Rickard's blood for testing of sexually-transmitted diseases but did refer Jane to the Child Advocacy Resource and Evaluation (CARE) team, a department within Cook Children's Medical Center in Fort Worth that cares for children who have suffered abuse or exposure to drugs.

Samantha Torrence, referenced in the record as Samantha Shercliff, of Alliance for Children conducted Jane's forensic interview. Torrence explained that most children do not excel at remembering dates well but may remember other information regarding an event that occurred. A child may also recant a report of abuse and later reaffirm the abuse or make statements of empowerment—reporting acts that did not happen such as punching a perpetrator—that enable the child to cope with what has

---

[2]Although Johnson recorded her interview of Jane, no recording of the interview was presented at trial.

happened. During her forensic interview with Torrence, Jane made an outcry of sexual abuse and gave sensory and peripheral details regarding her experience. Under cross-examination, Torrence agreed that she did not observe during the interview any signs that are typical of a coached child.

Terri Fugate, a sexual-assault nurse examiner on the CARE team, examined Jane on September 7, 2016. When Fugate asked Jane why she was there, Jane replied, "Because my sister's dad, Brandon, touched me," and explained that "it happened starting when I was five or six years old." Jane specified that the computer "didn't work to watch a movie, so [Rickard] came in the room and locked the door." Jane stated that Rickard "put the covers up and he put his private part . . . [in] my private part . . . . He moved my panties and went under it[,] and it hurt[,] and I was kicking him[,] and my mom came and knocked on the door[,] and he got off." Jane also reported that Rickard had touched her "private part" as well.

Fugate noted that "the last contact" had occurred about one month earlier. As part of typical testing on prepubescent children, and because Alice had stated that Jane was complaining of pain with urination, a test was performed on Jane's urine. Fugate testified that Jane's test result was positive for chlamydia, which Fugate stated is only contracted by genital–to–genital contact or, as Fugate agreed on cross-examination, through the birth canal from mother to child. Fugate agreed that a person with chlamydia can be asymptomatic. Although she is not an expert in blood tests for chlamydia and confirmed the CARE team does not "do blood tests for

4

chlamydia," Fugate admitted that she did not know whether a blood test would reveal "chlamydial antigens in the blood." She explained that contact beyond the labia majora constitutes penetration and that such contact would have been required for Jane to have contracted chlamydia. Chlamydia may also cause urinary tract infections, and Jane also had tested positive for that as well. A large dose of azithromycin, an antibiotic, was prescribed to treat Jane's chlamydia.

Fugate also noted that because Jane is prepubescent, genital penetration would have been extremely painful for Jane because the estrogen that renders the genitalia stretchable and pliable is not present until closer to puberty. Although injury to the hymen can occur from either consensual or abusive contact, Fugate explained that 95% of children, like Jane, do not present with injury and that the absence of injury does not negate a child's report of sexual assault.

Alice testified that Rickard was the only unrelated male with whom Alice had lived after Jane's birth, and Jane had never spent the night with her own biological father. Alice testified that she had contracted herpes and chlamydia from Rickard and that Jane had been prescribed medication that is used to treat chlamydia.

## B. Jane's Testimony

Jane was nine years old at the time of trial. She testified that she knew the difference between the truth and a lie and demonstrated her knowledge of these concepts in court by explaining that a person who described a green or blue shirt as pink would not be telling the truth.

Jane estimated that she was "seven or something" when Rickard lived in their apartment. When Jane was in prekindergarten or kindergarten, Jane asked Rickard to come into her bedroom to fix the television. Rickard entered Jane's bedroom to work on the television and closed and locked the door. While Jane was on her bed and under her covers, Rickard removed Jane's clothes and used his hand to touch "the place where you pee from" and then used his hand to go inside "the place where you pee from." This made Jane's body feel "uncomfortable." While his clothes were "half on and half off," Rickard hurt Jane's place "where you go pee" by touching her sexual organ with the skin of the front of his body that boys use to "pee." Jane stated that this also made her body feel "uncomfortable," and she screamed for Alice who did not hear her because she was watching television. Rickard asked Jane "if it felt good." Jane said she continued to scream and acknowledged that Rickard's "front" private part went inside her sexual organ, "the place you pee from," and it hurt a lot. When Rickard finished, he put his clothes on and left the room. Jane explained that she did not inform her mother of Rickard's acts until after they had moved, and Rickard was no longer living with them. When asked why she waited to inform her mother about what Rickard had done, Jane answered, "Because I didn't feel safe if I told . . . if me and my mom were still living there."

After Rickard had sexually assaulted Jane and after Jane and her mother had moved, Jane's "place where you pee from" hurt when she went to the bathroom and

"whenever [she] moved." Jane explained that her mother took her to the doctor, and she was prescribed a medication that tasted bad.

During cross-examination, Jane acknowledged that she had been mad at Rickard and believed that he had lied about her mother when he had "called the cops." Jane acknowledged that her mother had helped her remember what had happened. On redirect examination, Jane acknowledged that her mother had told her what to say at trial. The prosecutor asked, "What did she tell you?" In response, Jane answered, "To tell the truth."

## C. Rickard's testimony

Rickard testified at trial. He denied that he was living at the apartment when the offenses allegedly occurred and stated that he neither inserted his penis in Jane's sexual organ nor put his fingers inside Jane's sexual organ. Rickard asserted that Jane was upset with him because he had reported Alice's behavior to police and had obtained an emergency protective order. According to Rickard, Jane could have stayed with one of Alice's friends after Alice was arrested, but she chose to stay with him and Bailey until the following day when she left with her aunt. Rickard said that Jane lied a lot, and he thought that Jane had lied "[b]ecause of all the hurt that I have caused her mother in the past . . . [w]hich would be enough to, you know, want to put somebody in prison, especially if her mother said something like that." However when pressed to identify some of the many lies that Jane had told, Rickard replied, "I can't give you any."

7

Rickard explained that he had gone into the bedroom with Jane and Bailey to connect a computer to the internet. Bailey, who was always closing doors, had shut the door, and when Alice later knocked on the door, Rickard instructed Bailey to open the door. Because Bailey was unable to open the door, Rickard opened it. Rickard recalled that he did not know that the door had been locked. Rickard explained that after he was unable to restore the computer to working order, everyone watched a movie in the living room.

Rickard suggested that Alice had instructed Jane to report that he had sexually assaulted Jane when he went into her room to fix the television. Rickard believed that this was "the kind of lie that a child [would tell]." Rickard reported that neither a swab of his penis nor a sample of his urine had been collected and tested for chlamydia, and although he initially stated that he did not have chlamydia and had never been tested for it, he later admitted that he had "[n]o idea" whether he presently had chlamydia. Rickard proclaimed that he did not know how Jane contracted chlamydia but agreed "that putting your sexual organ inside the sexual organ of a child would be one way to give a child chlamydia." Rickard agreed that Jane's recollections that he went to "fix the television" while she was in the bed, that the door was shut and locked, and that Alice and Bailey were home were accurate and true, but disagreed with Jane's recollection that he had put his penis inside her sexual organ or had placed his finger inside her sexual organ.

8

## III. DISCUSSION

In his sole point, Rickard contends that the evidence is insufficient to convict him of the charged offenses because the jury's verdict "was tied to unproven, incendiary, and oft cited accusation that [he] gave [Jane] chlamydia thereby tainting the jury's verdict and denying him his due process rights." We disagree.

### A.      Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process, evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at

9

622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for

that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements."). The standard of review is the same for direct and circumstantial evidence cases—circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

## B. Applicable Law

Section 22.021 of the Texas Penal Code provides that a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means or causes the child's sexual organ to contact the actor's sexual organ and the victim is younger than fourteen years of age. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (iii), (a)(2)(B). The indictment alleged that Rickard intentionally or knowingly caused his sexual organ to contact Jane's sexual organ, that Rickard intentionally or knowingly caused the penetration of Jane's sexual organ by use of his finger, and that Jane was a child younger than fourteen years of age at the time of these acts.[3]

## C. Analysis

Rickard essentially contends that evidence of Jane's outcry, physical examination, forensic-interview statements, and trial testimony are not sufficient to support his convictions in light of Jane's purported contradictory statements—that

---

[3]The indictment also included a special issue alleging that Jane was a child younger than six years of age when one or both offenses occurred. *See* Tex. Penal Code Ann. § 22.021(f). The State waived the special issue at the outset of trial.

she was first touched above and then beneath her clothing—and Rickard's assertions that he did not perform the acts Jane described. For this reason, Rickard asserts that "the [State's] claim that [he] gave [Jane] chlamydia was the additional proof that the State needed to bolster [Jane's] contradictory story, thereby giving the jury what was needed to find [him] guilty of two counts of aggravated sexual assault of a child." For these reasons, Rickard asserts that he is entitled to an acquittal. We disagree with Rickard's assertions.

First, the testimony of a child sexual-assault victim alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (providing that requirement that victim inform another person within one year does not apply to a victim who is seventeen years of age or younger at the time of the offense); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.). Jane testified that Rickard had used his hand to touch and enter her "place where you pee from" and had touched the skin of the front of his body from which boys "pee" to her sexual organ and had placed it inside "the place [she pees] from." Jane also presented testimony establishing that she was under the age of seventeen when Rickard committed these acts. Consequently, Jane's testimony, without more, was sufficient to permit the jury to find beyond a reasonable doubt the statutory elements of the charged offenses as modified by the factual details and legal theories contained in the indictment. *See Jenkins*, 493 S.W.3d at 599; *Rabb*, 434 S.W.3d at 616; *Crabtree*, 389 S.W.3d at 824.

12

Second, the jury heard conflicting testimony at trial. Jane testified that Rickard entered her bedroom, locked the door, used his "hand" to penetrate "the place where you pee from" on her body, hurt her "place where you go pee" by touching it with the skin on the front part of his body that boys use to "pee," and placed his sexual organ inside her sexual organ, causing her a lot of pain. Jane initially stated to Johnson that Rickard had touched her above her clothes and subsequently stated that he touched her under her clothes. Contrary to Jane's testimony, Rickard testified that he did not do these acts and suggested that Jane had been prompted by Alice to make the accusations against him after he reported Alice to police, and she was arrested. He also testified that Jane was a frequent liar but was unable to provide an example of one of Jane's lies. Contrary to Jane's assertion that Rickard had locked the bedroom door, Rickard explained that Bailey was present when he was in the bedroom with Jane and suggested that Bailey had locked the bedroom door without his knowledge. The evidence that Jane had been diagnosed with chlamydia after her initial outcry was countered by Rickard's testimony that he did not have the disease, and the suggestion that Rickard had transmitted the disease to Jane through sexual contact was countered by Fugate's admission during cross-examination that the disease may be transmitted to an infant during birth.[4]

---

[4]Based on the nurse examiner's testimony regarding the possible transmissions of chlamydia, the chlamydia-related evidence was not relevant to the allegation of sexual assault based on penetration of Jane's sexual organ by means of Rickard's finger.

"The jury is free . . . to reconcile conflicts in the testimony, and to accept or reject any or all of the evidence of either side." *Bottenfield v. State*, 77 S.W.3d 349, 355 (Tex. App.—Fort Worth 2002, pet. ref'd). Moreover, the jury, as factfinder, is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326, 99 S. Ct. 2781; *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). By its verdict, the jury has shown that it chose to believe Jane's testimony, which alone is sufficient to support Rickard's convictions. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1); *Connell*, 233 S.W.3d at 466.

The State was not required to prove that Rickard had chlamydia or that he transmitted it to Jane. Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (citing *Jackson*, 443 U.S. at 313, 99 S. Ct. at 61). As we have discussed, the State presented Jane's testimony, which alone was sufficient to permit a rational factfinder to find Rickard guilty beyond a reasonable doubt of the charged offenses of aggravated sexual assault of a child.

We agree with Rickard's assertion that speculation may not provide the basis for drawing inferences or reaching conclusions.

14

> [A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

*Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). The jury is not allowed to draw conclusions based on speculation. *Tate*, 500 S.W.3d at 413 (citing *Hooper*, 214 S.W.3d at 16). "Unlike a reasonable inference, speculation is insufficiently based on the evidence to support a finding beyond a reasonable doubt." *Id.* However, in this case, the jury was not required to speculate in order to draw its inferences or reach its conclusions. The jury had before it sufficient evidence that it reconciled and weighed. Based on the evidence's cumulative force when viewed in the light most favorable to the verdict, the jury made reasonable inferences authorizing it to find the elements of the offenses beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622; *Villa*, 514 S.W.3d at 232; *Murray,* 457 S.W.3d at 448.

Viewed in the light most favorable to the verdict, the evidence is sufficient to support the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Rickard's sole point on appeal.

## IV. CONCLUSION

Having overruled Rickard's sole point, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  October 3, 2019